## 44558.   SCOTT v. RYDER TRUCK LINES, INC.

WHITMAN, Judge.   This case involves a suit by Hugh H. Scott, appellant, on a contract.   As to one of the complaint's allegations the defendant, "Ryder," sought and received a summary judgment.   It is from this order that the appeal was taken.

The contract between the parties is alleged to consist of a particular written agreement and a subsequent "oral novation." It is best, at the outset, to set forth the nature of the written contract and some of its pertinent provisions.

Scott, in his capacity as the owner or lessor of some transportation vehicles, i.e., tractor-trailer trucks, etc., and Ryder, in its capacity as a common carrier, i.e., as one authorized by various federal and state agencies to transport regulated "traffic" on the highways, entered into a written agreement. The agreement is dated January 31, 1967.   It provided in substance that Scott desired to furnish his "equipment and transportation services" to Ryder and that Ryder in turn desired to rent the equipment and also to have Scott serve as a "sales agent" in soliciting and procuring traffic (i.e., freight, etc.) to be hauled on the equipment.

The equipment involved in the contract was listed in an appendix to the agreement and each item was identified in several ways, e.g., by serial number, make, cost and whether it was "new or used."   The appendix in the contract before us shows five "tractors" and seventeen "trailers." The writing also provides that Scott could increase or substitute with regard to the leased equipment, provided that any additions or substitutions be made by "proper written endorsement" to the equipment list, "which endorsement shall be signed by both parties."

With regard to Scott's service as Ryder's sales agent, the contract provides that Scott agreed to receive orders for Ryder's services as an interstate or intrastate motor carrier; that Scott would solicit traffic to be hauled and that the traffic so solicited would be hauled on the leased vehicles.

For working as Ryder's sales agent Ryder was to pay Scott a commission of eight percent (8%) of the gross revenues received from shipments.   Also, "[a]s compensation for the use of his equipment, Ryder agrees to compensate Scott in the sum of seventy-two (72%) of the revenue received in

regulated traffic which is transported on the equipment listed in [the equipment list] . . . and all endorsement thereto."

One paragraph of the agreement is addressed to "termination." It provides, in its entirety, as follows: "6. DURATION AND TERMINATION (a) This agreement shall also terminate immediately upon either the death or disability of the individual, Hugh H. Scott." (This provision indicates that there are other provisions to be found in the agreement relating to its termination but a reading reveals no others.)

Another paragraph of the agreement is addressed to the "effect of termination." It provides: "7. EFFECT OF TERMINATION (a) Whenever this contract shall be terminated as set forth above, Ryder will purchase from Scott any and all motor vehicle equipment that Scott may have acquired pursuant to this agreement and for which Ryder has given its prior approval in writing for Scott to acquire. The price at which Ryder shall purchase said equipment will be determined according to the following formula: [here there appear two formulas, one for 'new motor vehicle equipment' and one for 'used motor vehicle equipment'] . . . (b) It is expressly understood and agreed that these provisions setting forth the 'effect of termination' are absolutely essential to the contract. Ryder expressly recognizes that Scott would not undertake to enter into this agreement and acquire additional equipment for use in the operations contemplated were Scott not able to rely on the foregoing provisions requiring Ryder to purchase equipment from Scott in the event of termination."

The complaint alleges there was a breach of the above contract by Ryder; that Ryder refused to pay commissions due under the contract despite demands and that by reason of Ryder's failure to meet such contractual obligations, Scott, on January 2, 1968, "was forced to consider said contract of January 31, 1967, and the novation as terminated and breached." Scott seeks to recover the commissions he alleges he has earned but have not been paid. He also alleges the following in Paragraph 10 of his complaint: "10. By reason of the defendant's default in its obligations, the defendant, pursuant to the contract of January 31, 1967, and the referred to novation, is obligated to purchase all of the said equipment belonging to the plaintiff or dry-leased by the plaintiff from the defendant for the amount of $156,534.94."

The motion for summary judgment by Ryder, which was granted and which is the subject of this appeal, was addressed to the last mentioned Paragraph 10 of the complaint and reads as follows:

"[T]he defendant . . . moves the court to enter a summary judgment in favor of the defendant that defendant is under no obligation or liability to plaintiff on the claim set forth in said Paragraph 10 and had no obligation to purchase equipment from plaintiff and there is no liability on the part of defendant to plaintiff for any part of the amount alleged in said Paragraph 10. This motion is made on the ground that there is no genuine issue of fact in this case on the question of any obligation of defendant to purchase equipment and defendant is entitled to a judgment as a matter of law on this issue."

The order entered granting Ryder's motion reads: "It is hereby ordered and adjudged that the defendant's motion for summary judgment is granted as prayed for and it is adjudged and decreed that defendant was and is not obligated to purchase equipment from plaintiff and has no liability to plaintiff on account of failure or refusal to purchase equipment." *Held*:

1. As previously seen, Scott's complaint alleges that an "oral novation" occurred, the effect of which was that "if the contract were terminated as set out in the written contract *or terminated because of the default of the defendant,*" the defendant would be obligated to purchase the equipment.

There is much discussion in the briefs regarding the alleged oral novation and whether such can be shown or considered or is of any effect.

It is obvious from reading Scott's complaint in its entirely that the broad meaning usually accorded the term "novation" is not intended, i.e., where novation means the effecting of a completely new contract arising from the agreement of the parties to a new contract and the extinguishment of the old contract and its obligations. *Williams v. Rowe Banking Co.*, 205 Ga. 770, 771 (55 SE2d 123). Rather, what Scott is alleging is that there was a subsequent change in one of the terms of the original contract, i.e., the "termination" provision. Such action between the parties, if it did occur as alleged, would more correctly be called a "modification" of the original contract.

It is not permissible, as a general rule, to attempt to show by parol evidence that the language of a written contract means something other than what it plainly says. However, parties may, subsequently to reducing their agreement to writing, decide to carry out their agreement in a manner different from what the writing specifies; they can agree to modify their agreement. They then operate under two agreements, the original and the modification. In such a case, merely to show what the additional agreement is, does not vary what was originally written. Original agreements may be modified by an oral or written agreement and may be enforced if there is a sufficient consideration therefor. *Evans v. Henson,* 73 Ga. App. 494 (37 SE2d 164); *Moon Motor Car Co. v. Savannah Motor Car Co.,* 41 Ga. App. 231 (152 SE 611). However, oral modifications as to those matters in a contract required by the Statute of Frauds to be in writing are ineffective (*Augusta Southern R. Co. v. Smith & Kilby Co.,* 106 Ga. 864 (33 SE 28)), unless the contract as so modified has been acted on or performed by one of the parties. *Planters Cotton-Oil Co. v. Bell,* 54 Ga. App. 433 (188 SE 41). In this State a special plea is required to invoke the protection of the Statute of Frauds.

In reviewing the material presented in support of the motion for summary judgment, we do not find that the allegations with regard to the oral novation and breach of contract have been pierced. The party moving for a summary judgment has the burden of showing the absence of a genuine issue and the opposing party has no duty unless and until the movant has made a prima facie showing of right to a summary judgment. *Central of Ga. R. Co. v. Hawes,* 120 Ga. App. 4 (169 SE2d 356); *Shadix v. Dowdney,* 117 Ga. App. 720 (162 SE2d 245). With such issues remaining unresolved, the trial court erred in granting the motion for summary judgment.

*Judgment reversed. Jordan, P, J., and Hall, J., concur.*

Argued July 9, 1969—Decided December 16, 1969.

*Hudson & Stula, Jim Hudson,* for appellant.

*Fortson, Bentley & Griffin, Edwin Fortson, Robert W. Gerson, Sanders, Hester, Holley, Ashmore & Boozer,* for appellee.