**FUNDING SYSTEMS LEASING COR-
PORATION, Plaintiff-Appellee,**

v.

**Garland B. PUGH, Sr., Individually and
d/b/a Georgia Tractor and Equipment
Company, Defendant-Appellant.**

No. 74–3823.

United States Court of Appeals,
Fifth Circuit.

April 19, 1976.

Fred H. Hodges, Jr., Macon, Ga., for defendant-appellant.

J. Timothy White, Atlanta, Ga., for plaintiff-appellee.

Before BROWN, Chief Judge, and THORNBERRY, Circuit Judge, and MILLER * Associate Judge.

THORNBERRY, Circuit Judge:

Plaintiff Funding Systems Leasing Corporation commenced this Georgia diversity action for deceit[1] against Gar-

---

* Of the U.S. Court of Customs and Patent Appeals sitting by designation.

1. Ga.Code Ann. § 105–302 (Rev.1968) provides that

[w]ilful misrepresentation of a material fact, made to induce another to act, and upon which he does act to his injury, will give a right of action. Mere concealment of such a fact, unless done in such a manner as to

land B. Pugh, individually and doing business as Georgia Tractor & Equipment Company, to recover damages arising out of the default of E. F. Anderson & Son, Inc., on a logging equipment lease. The district court, sitting without a jury, found for Funding Systems and assessed damages against Pugh. On appeal Pugh challenges (1) two crucial findings by the district court, (2) the failure of the district court to apply Ga. Code Ann. § 105–303, and (3) the formula used to measure damages. For the following reasons, we affirm the judgment of the district court.

Appellant Pugh was a creditor of financially troubled E. F. Anderson & Son, which operated a pulpwood and timber business in Barnesville, Georgia. To help E. F. Anderson & Son in obtaining needed working capital, Pugh assigned a promissory note, signed by E. F. Anderson and his son and payable to Georgia Tractor & Equipment Company, to a Georgia bank. In return, Pugh acquired proxy control of all the outstanding stock of E. F. Anderson & Son. After this transaction, all records of E. F. Anderson & Son were kept in Pugh's Byron, Georgia, office, some fifty miles from the site of E. F. Anderson & Son's operations in Barnesville. A bookkeeper, hired by Pugh and paid equally by Pugh and E. F. Anderson & Son, maintained the latter's books at Pugh's office. Approximately six months after Pugh gained proxy control, E. F. Anderson approached Pugh with the idea of purchasing additional logging equipment from Pugh's company. At about the same time, a representative of Funding Systems conferred with Pugh about purchasing equipment, which would in turn be leased by Funding Systems to a third party immediately after purchase. Funding Systems's usual method of operation was to locate a potential lessee of equipment, make firm arrangements for a lease, and at that point purchase the equipment contemplated in the lease. Without disclosing his relationship to E. F. Anderson & Son, Pugh suggested the company as a possible lessee of logging equipment. The district court found—and appellant Pugh challenges this finding—that Pugh prepared a misleading and fraudulent financial statement concerning E. F. Anderson & Son. The erroneous financial statement was handdelivered by Pugh to representatives of Funding Systems and was relied on by Funding Systems in accepting E. F. Anderson & Son as a lessee. With the exception of a down payment, E. F. Anderson & Son completely defaulted on the lease and went into bankruptcy. The district court found, and appellant concedes, that the logging equipment was sold to Funding Systems at a price substantially above that suggested by the manufacturer of the equipment. Damages were assessed against Pugh in an amount equal to the difference between the manufacturer's suggested selling price for the logging equipment and the price at which Pugh in fact sold the equipment to Funding Systems. *See* Record on Appeal, Vol. I, at 66–68. The determination of liability hinged on the district court's finding that Pugh prepared the misleading financial statement and that Funding Systems exercised due diligence in its dealings with Pugh and E. F. Anderson & Son. As with the finding that he was primarily responsible for the preparation of the financial statement, Pugh also challenges the determination that Funding Systems exercised due diligence. Finally, the district court held that Pugh was under no duty to disclose his proxy relationship with E. F. Anderson & Son to Funding Systems, and the latter has not cross-appealed that holding.

I.

We turn first to the district court's finding that Pugh was primarily

---

deceive and mislead, will not support an action. In all cases of deceit, knowledge of the falsehood constitutes an essential element. *A fraudulent or reckless representa-* tion of facts as true, which the party may not know to be false, if intended to deceive, is equivalent to knowledge of the falsehood.

responsible for the preparation of the misleading financial statement. The district court focused on three factors that inculpated Pugh. First, Pugh handled all the negotiations leading up to the purchase of the equipment and its leasing to E. F. Anderson & Son, and it was not until the details of the transaction had been fully agreed upon by Pugh and Funding Systems that the latter directly contacted E. F. Anderson & Son. As an indication of the control Pugh exercised, plaintiff stressed the hand-delivery of the financial statement, which was accompanied by a cover letter signed by Pugh. Second, the district court properly found that the bookkeeper mentioned above, who actually prepared the financial statement from records maintained in Pugh's office, was "employed" by Pugh. *See* Record on Appeal, Vol. I, at 64. Third, Pugh demonstrated a familiarity with the affairs of E. F. Anderson & Son that would have made possible his preparation of the misleading financial statement. The district court's finding that Pugh was primarily responsible for preparation of the misleading financial statement is measured by the standard of clear error. *See* Fed.R.Civ.P. 52(a); *Guardian Life Insurance Co. v. Eagle*, 484 F.2d 382 (5 Cir. 1973); *Baggett v. Richardson*, 473 F.2d 863 (5th Cir. 1973). From our examination of the testimony given and the evidence introduced at trial, we cannot say that the district court's finding was clearly erroneous.

Appellant next challenges the district court's determination that Funding Systems exercised due diligence in its handling of the purchase and lease transaction. Under Georgia statutory law, the complaining party in a suit for deceit cannot prevail if by the exercise of due diligence he could have obtained knowledge of the truth. *See* Ga.Code Ann. §§ 37–211, 37–212. The standard is one of reasonable diligence, and the defrauded party is "not bound to exhaust all means at his command to ascertain the truth before relying upon the representations." *Dorsey v. Green*, 202 Ga. 655, 44 S.E.2d 377, 380 (1947); *see*

*Lariscy v. Hill*, 117 Ga.App. 152, 159 S.E.2d 443 (1968); *Blanchard v. West*, 115 Ga.App. 814, 156 S.E.2d 164 (1967). Careful consideration of the information contained in the financial statement should be all that was required in the instant commercial transaction. The function of a financial statement is to provide reliable and essential information for an expeditious, but considered, business decision. The prevalent use of financial statements is testimony to the faith placed in them by the business community. In any event, the evidence at trial disclosed that Funding Systems did investigate the information in the financial statement, inquiring with two Georgia banks on the credit status of E. F. Anderson & Son. *See* Record on Appeal, Vol. I, at 61. The determination by the district court of due diligence on the part of Funding Systems, which upon close analysis is a mixed question of law and fact, is subject to appellate review under the clearly erroneous standard. *See Nelson v. Jacksonville Shipyards, Inc.*, 440 F.2d 668 (5 Cir. 1971); *Bethlehem Steel Corp. v. Yates*, 438 F.2d 798 (5 Cir. 1971); *McAllister v. United States*, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954); 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2590, at 760–66 (1971). *But cf. Mamiye Brothers v. Barber S.S. Lines, Inc.*, 360 F.2d 774, 776–78 (2 Cir.), *cert. denied*, 385 U.S. 835, 87 S.Ct. 80, 17 L.Ed.2d 70 (1966). We hold that the district court's finding that Funding Systems exercised due diligence was not clearly erroneous.

## II.

Appellant argues in this court, on the basis of Ga.Code Ann. § 105–303, that even if the district court's determination that appellant prepared and furnished the misleading financial statement was not clearly erroneous, appellant could still not be held legally accountable for the contents of the statement. *See* Brief for Appellant at 13. Section 105–303 provides that

[n]o action shall be maintained for deceit in representation to obtain credit for another, unless such misrepresentation is in writing, signed by the party charged therewith.

It is appellant's theory that his signature on the cover letter attached to the financial statement was insufficient to satisfy the signature requirement of section 105–303. Funding Systems responds that appellant failed to raise this argument properly in the district court and is, thereby, precluded from making the argument on appeal. An examination of the record discloses that appellant did not affirmatively plead section 105–303 in his answer. *See* Record on Appeal, Vol. I, at 15–18. Moreover, the statute's applicability is not discussed in the district court's pre-trial order, which is signed by the court and the parties and purports to be an all-inclusive statement of the issues presented for consideration.[2] The only reference to section 105–303 that we have been able to discover in the record is a brief discussion of the statute in appellant's memorandum in support of his motion for summary judgment, which was requested by appellant and denied by the district court after the entry of the pre-trial order. *See id.* at 42. Section 105–303 was not argued by counsel for appellant in either his opening or closing remarks to the district court, both of which occurred after the ruling on the motion for summary judgment. *See id.*, Vol. II, at 4–6, 313–30. Not surprisingly, the opinion of the district court does not make any findings of fact or draw any conclusions of law relative to the application of section 105–303, and in fact does not even mention the statute in passing. *See id.*, Vol. I, at 59–68.

■ Under the federal practice, the pre-trial order of the district court "when entered controls the subsequent course of the action, unless modified at trial to prevent manifest injustice." Fed.R.Civ.P. 16. Thus, matters stipulated in the pre-trial order are binding upon the parties, absent some modification, *see United States v. Tampa Bay Garden Apartments, Inc.*, 294 F.2d 598 (5 Cir. 1961), and normally cannot be pursued on appeal. *See New Orleans Furniture Manufacturing Co. v. Great American Insurance Co.*, 413 F.2d 1278, 1281 (5th Cir. 1969). In the instant case, we are urged to consider an issue that appellant neglected to have the district court include in the pre-trial order, and which appellant failed to specially plead. We do not choose to narrow our holding to the precise effect that failure to have an issue included in the pre-trial order has on the scope of permissible appellate argument, though it is probable that this defect waives the argument. *Cf. Pacific Indemnity Co. v. Broward County*, 465 F. 2d 99 (5 Cir. 1972). Rather, we look to the clearer principle embodied in Fed.R. Civ.P. 8(c) that affirmative defenses must be set forth in a responsive pleading or be deemed waived. *See United States v. Industrial Crane & Manufacturing Corp.*, 492 F.2d 772 (5 Cir. 1974); 2A J. Moore, Federal Practice ¶ 8.27[3] at 1853 (2d ed. 1948).

■ Whether section 105–303 is an affirmative defense within the meaning of Rule 8(c) is determined by looking to the substantive law of the state where the federal district court sits. *Norman M. Morris Corp. v. Weinstein*, 466 F.2d 137, 142 (5 Cir. 1972); *Seal v. Industrial Electric, Inc.*, 362 F.2d 788, 789 (5 Cir. 1966); *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Georgia courts have not explicitly considered whether section 105–303 is an affirmative defense; it should be regarded as clear by analogy, however, that this is the case. Section 105–303 protects a defendant from unfounded allegations of deceit, much as the

2. The district court's pre-trial order states that it "shall supersede the pleadings and shall not be varied or amended except for good cause shown and to do substantial justice between the parties." *See* Record on Appeal, Vol. I, at 21; Fed.R.Civ.P. 16. As far as the record indicates, appellant Pugh never moved to amend the pre-trial order to include the applicability of section 105–303 as an issue for consideration.

Georgia Statute of Frauds, Ga.Code Ann. § 20–401, can protect the same defendant from allegations that an enforceable contract has been breached. In a sense, section 105–303 provides the defendant with an extra measure of protection since it is an exception to the general rule that the statute of frauds can be circumvented by pleading actual fraud or deceit on the part of one's opponent. *See* 37 C.J.S. Statute of Frauds § 217 (1943); 2A A. Corbin, Contracts § 341 (1950). *Compare Hendrix v. Scarborough*, 131 Ga.App. 342, 206 S.E.2d 42 (1974) *with Smith v. Jewett*, 10 Ga.App. 294, 73 S.E. 549 (1912). The consistent position taken by the Georgia courts, both before and after the adoption of the Civil Practice Act of 1966, has been that the Georgia Statute of Frauds contained in section 20–401 is an affirmative defense that must be specially pleaded by defendant. *See* Ga.Code Ann. § 81A–108(c); *Scott v. Ryder Truck Lines, Inc.*, 120 Ga.App. 819, 172 S.E.2d 365 (1969); *Beck v. Johnston*, 118 Ga.App. 541, 164 S.E.2d 342 (1968); *Marston v. Downing Co.*, 73 F.2d 94 (5 Cir. 1934) (Georgia case); *Tift Wight & Weslosky Co.*, 113 Ga. 681, 39 S.E. 503 (1901). Because it functions in the same way as section 20–401, we believe that section 105–303 is an affirmative defense under Georgia law that must be set forth in a responsive pleading or be waived.

We reject the notion that appellant Pugh complied with the requirement of Rule 8(c) by virtue of the reference to section 105–303 in his memorandum in support of the motion for summary judgment. There is disagreement among the circuits on the extent to which affirmative defenses can be raised by motions, including motions for summary judgment under Fed.R.Civ.P. 56. *See* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1277, at 328–29 (1969). *Compare Williams v. Murdoch*, 330 F.2d 745 (3 Cir. 1964); *Continental Collieries, Inc. v. Shober*, 130 F.2d 631 (3

Cir. 1942) *with Eberle v. Sinclair Prairie Oil Co.*, 35 F.Supp. 296 (E.D.Okl.1940), *aff'd*, 120 F.2d 746 (10 Cir. 1941); *McGowan v. Lehigh Valley R.R. Co.*, 3 F.R.D. 479 (S.D.N.Y.1942). The rule we follow today would allow a defendant to raise an affirmative defense, like section 105–303, by a motion for summary judgment, *see* 5 C. Wright & A. Miller, *supra* § 1277, at 330, but only when the motion for summary judgment is the initial pleading tendered by defendant. *See Gifford v. Travelers Protective Association*, 153 F.2d 209 (9 Cir. 1946). When the defendant has waived his affirmative defense by failing to allege it in his answer, or have it included in a pre-trial order of the district court that supersedes the pleadings, he cannot revive the defense in a memorandum in support of a motion for summary judgment. *See Roe v. Sears, Roebuck & Co.*, 132 F.2d 829 (7 Cir. 1943). We hold that appellant waived his section 105–303 argument by failing to affirmatively set forth this argument in a responsive pleading. Accordingly, the argument cannot be considered on appeal.

### III.

The black-letter rule in Georgia for measuring damages in an action for deceit is the difference between the actual value of the thing conveyed and its value had the representations been true. *See, e. g., Spindel v. Kirsch*, 114 Ga.App. 520, 151 S.E.2d 787 (1966); *McCrary v. Pritchard*, 119 Ga. 876, 47 S.E. 341 (1904). For example, if defendant sells a used automobile representing it to be new, plaintiff is entitled to damages measured by the difference between the actual value of the automobile at the time of delivery and the value that the automobile would have had if the representation of newness had been accurate. *See Rustin Oldsmobile, Inc. v. Kendrick*, 123 Ga.App. 679, 182 S.E.2d 178 (1971).[3]

---

**3.** The Georgia formula for measuring damages for deceit is thus the same rule applied in breach of warranty cases, *see, e. g.*, Uniform Commercial Code § 2–714(2), and is the majority rule employed in this country. *See* W. Prosser, Torts § 110, at 734 (4th ed. 1971).

As indicated above, the district court awarded damages equal to the difference between the manufacturer's suggested retail price for the logging equipment ($69,425.00) and the actual price charged Funding Systems ($90,000.00). *See* Record on Appeal, Vol. I, at 67. At trial, Funding Systems argued that the correct measure of damages was the amount it paid for the logging equipment less the one rental payment it received ($10,707.57) and the money it received upon resale of the logging equipment ($27,241.31), for a total award of $52,051.12. The district court declined to apply this measure of damages because of an inadequate showing by Funding Systems that it had received the fair market value of the equipment upon resale following repossession. The measure of damages ultimately used by the district court was suggested by Funding Systems as an alternate, and Funding Systems does not challenge the application of that measure of damages in this appeal.

Appellant Pugh contends that the damages assessed by the district court were not proximately caused by the inaccuracies in the financial statement. Appellant grounds his argument on the district court's holding—not before us on appeal—that appellant was under no duty to disclose to Funding Systems his proxy control of E. F. Anderson & Son. *See* Ga.Code Ann. § 22–610 (Rev. 1970). As one basis of the award of damages, the district court reasoned—or so appellant argues—that had the relationship between Pugh and E. F. Anderson & Son been one at arm's length, E. F. Anderson & Son would have exerted its bargaining power to insure the sale of the logging equipment at a reasonable price. *See* Record on Appeal, Vol. I, at 66. This follows, of course, from the functional relationship between the amount of the lease rentals, which E. F. Anderson & Son would have to pay, and the price actually paid for the logging equipment by Funding Systems. Appellant Pugh maintains that absent a duty to disclose his relationship with E. F. Anderson & Son, the argument of countervailing power is inapposite.

We express no opinion on the merits of appellant's argument. As we read the opinion of the district court, the principal basis for holding Pugh liable for the excess profit was the conclusion that but for his invitation to Funding Systems to participate in the lease with E. F. Anderson & Son, coupled with the inducement of the misleading financial statement, Funding Systems would never have purchased the logging equipment from Pugh and suffered the unreasonable mark-up. *See* Record on Appeal, Vol. I, at 66–67. The damages incurred by Funding Systems were clearly a proximate result of the fraud perpetrated by Pugh. Admittedly, the transaction at hand does not fit neatly within the traditional measure of damages applied by the Georgia courts, which finds its usual application where the misrepresentation goes to the goods themselves rather than a crucial extrinsic fact. *See, e. g., Rustin Oldsmobile, Inc. v. Kendrick, supra.* Nevertheless, we view the accepted measure of damages as flexible enough to encompass the award made by the court below.[4]

Accordingly, the judgment of the district court is in all respects AFFIRMED.

---

4. Ga.Code Ann. § 105–2008 places an outer limit on the damages recoverable in a tort action, such as deceit:

If the damages are only the imaginary or possible result of the tortious act, or other and contingent circumstances preponderate largely in causing the injurious result, such damages are too remote to be the basis of recovery against the wrongdoer.

We do not view the award of the district court as inconsistent with the standards of section 105–2008. *Cf. Southern Ry. Co. v. Elliott,* 93 Ga.App. 370, 91 S.E.2d 775, 778 (1956).