UNITED STATES of America, Plaintiff-Counter Defendant-Appellee,

v.

BURZYNSKI CANCER RESEARCH IN-STITUTE, et al., Defendants-Counter Plaintiffs-Appellants

and

Janice Kuharzyk, and Other Patients of Dr. Stanisław R. Burzynski, et al., Intervenors-Counter Plaintiffs-Appellants.

No. 86–2183.

United States Court of Appeals, Fifth Circuit.

June 25, 1987.

Christian P. Di Ferrante, John T. Johnson, Calvin, Dylewski, Gibbs, Maddox, Russell & Verner, Houston, Tex., for Burzinski Cancer Research Institute.

Margaret A. Harris, Stuart M. Nelkin, Nelkin & Nelkin, Houston, Tex., for Juanice Kuharzyk, etc., et al.

Gerald C. Kell, Atty., U.S. Dept. of Justice, Office of Consumer Lit., Washington, D.C., Linda M. Cipriani, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Frank A. Conforti, James R. Gough, Asst. U.S. Attys., Houston, Tex., for the U.S.

Before RUBIN, RANDALL, and JOHNSON, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Armed with a search warrant, the government seized a doctor's patient-treatment records during an investigation to determine whether the doctor had violated criminal fraud statutes and a criminal statute forbidding the interstate shipment of drugs that had not been approved by the Food and Drug Administration. The doctor and some of the patients, as intervenors, sought to have the records returned and to obtain damages and other relief by filing a counterclaim in a previously pending civil action filed by the government to enjoin interstate distribution of the drug. The district court properly held that the doctor and his patients have failed to establish any basis entitling them to a hear-ing on the validity of the search warrant or any grounds for finding that the seizure of the records was unconstitutional. We therefore affirm its dismissal of all counterclaims regarding the seizure or continued government retention of documents from the doctor's offices. Because, however, in the absence of an opportunity to conduct discovery regarding their contention that the government had provided insurance companies with false and misleading information, the doctor and his patients have not had a chance to develop facts that may entitle them to injunctive relief on that score, we remand that counterclaim for further proceedings.

I.

In 1983, the United States sued Dr. Stanislaw R. Burzynski and the Burzynski Cancer Research Institute (together referred to as Dr. Burzynski) in this civil action seeking to enjoin them from violating the Federal Food, Drug, and Cosmetic Act[1] by interstate distribution of a product used in cancer chemotherapy, antineoplastons, on the ground that the antineoplastons were "new drugs" within the meaning of the Act,[2] and were being distributed without prior approval by the Food and Drug Administration. Dr. Burzynski manufactures the natural type of antineoplastons from urine, and synthetic forms, called antineoplastons 10, from various chemicals. The government also sought to enjoin the manufacture and distribution of antineoplastons on the ground that the drugs were adulterated within the meaning of the Act[3] because Dr. Burzynski's manufacturing methods, facilities, and controls did not comply with the FDA's current good manufacturing practice regulations. A number of Dr. Burzynski's patients were allowed to intervene. After a two-day hearing, the district court issued an injunction granting most of the relief sought by the government. It also directed Dr. Burzynski to bring his research and manufacturing facility into compliance with FDA's current

---

**1.** 21 U.S.C. § 301, et seq. (1982).

**2.** 21 U.S.C. § 321(p).

**3.** 21 U.S.C. § 351(a)(2)(B).

good-manufacturing procedures, ordering the FDA in turn to act promptly on their submission for approval. The order, however, expressly allowed Dr. Burzynski to continue manufacturing and prescribing the drug in Texas. The court expressly retained continuing jurisdiction to enforce or modify its order.

Two years later, in July 1985, as part of a criminal investigation based on a referral from the FDA to the Department of Justice, the government applied for and obtained a warrant to search an office complex that, as the warrant stated, housed the administrative offices of Dr. Burzynski and the Burzynski Research Institute, Incorporated, a separate legal entity from Burzynski Cancer Research Institute, which had been a defendant in the civil action. The application for the warrant was supported by the affidavit of FDA Compliance Officer, Kenneth P. Ewing. Ewing stated that the application was based on FDA inspections and investigations of Dr. Burzynski and the Institute, information supplied by insurance companies that had received claims from Dr. Burzynski, information supplied by the surviving spouse of one of Dr. Burzynski's patients, and information supplied by confidential informants.

In terms set forth in full in the footnote,[4] the warrant authorized a search for and seizure of records and other property that reflected distribution of antineoplastons outside the State of Texas and other records that would show the antineoplastons had been and were being distributed in interstate commerce in violation of Title 21, United States Code 331(d), the court injunction, and Title 18, United States Code, Sections 286, 287, 371, 401, 1001, 1341, and 1505. During the search Dr. Burzynski's employees were allowed to take records to a commercial copying center to make copies. On the advice of his employees, Dr. Burzynski himself "decided to give away filing cabinets along with the records" in order to protect the records. Since the execution of the search warrant, Dr. Burzynski has been allowed to install a copying machine in the FDA offices in Houston where the seized patient treatment records are being held and has made copies of those treatment records that he desires.

After the warrant had been executed, Dr. Burzynski and the Burzynski Research Institute, Inc. filed a counterclaim in this civil action seeking damages, injunctive relief, and contempt orders against the government and certain FDA employees, including the FDA Compliance Officer Ewing, Sharyn Miller, an investigator who had assisted Ewing in executing the warrant, and other unknown agents of the FDA and the United States. Certain named patients of Dr. Burzynski were given leave to file their own counterclaim as intervenors and sought a temporary restraining order commanding return of the records and other emergency relief.

During a twelve-day hearing on the motion for a temporary restraining order and contempt ruling, Dr. Burzynski testified that he had continued to treat patients in Texas. Based on what some of them told him, he suspected that antineoplastons were supplied from the Institute to patients in other states, but he testified that he did not believe it would be possible to detect such shipments with certainty unless every one of the Institute's employees had "a spy on his back." After the hearing was completed, the district court denied all of the motions.

The government then responded to the counterclaims by moving for their dismis-

4. Records and other property, including antineoplastons, of Stanislaw R. Burzynski, M.D., Burzynski Research Institute, Incorporated, Cameron Frye, and North American Consultants, Limited, that reflect:
(a) distribution of antineoplastons outside the State of Texas;
(b) the true addresses of persons to whom antineoplastons have been and are being distributed;
(c) patient treatment, patient accounts, and patient billings; and
(d) insurance claims and receipt of insurance payments that show that antineoplastons have been and are being distributed in interstate commerce in violation of Title 21 United States Code, Section 331(d) and the injunction of this Court and that evidence violations of Title 18, United States Code, Sections 286, 287, 371, 401, 1001, 1341, and 1505.

sal for failure to state a claim for which relief could be granted or, in the alternative, for summary judgment. In a brief order, which referred to the evidence adduced in the earlier hearing on the motion for a temporary restraining order, the court dismissed the counterclaims.

## II.

Dr. Burzynski and the patients contend that the district court impermissibly consolidated the hearing on the motions for TRO, return of property, and contempt (the preliminary motions) with trial on the merits of their counterclaims. The simple fact is that no such consolidation occurred. At the close of the hearing on the preliminary motions, the district court orally denied those motions. Thereafter, the court entered a nine-page order setting forth its findings with respect to the preliminary motions and its legal basis for denying those motions. Subsequent to the hearing on the preliminary motions, the government filed its motion to dismiss for failure to state a claim or, alternatively, for summary judgment on all of the counterclaims. In an order separate from the order denying the preliminary motions, the district court dismissed the counterclaims.

The district court did state in the later order that, because the issues raised in the counterclaims "raise legal questions which were decided against the Defendants and Intervenors [Dr. Burzynski and the patients] in the hearing of October 23, 1985" (the hearing on the preliminary motions), it would not repeat its discussion of those issues. In other words, the district court simply elected not to restate in its dismissal order legal analysis it had already set forth in its denial of the preliminary motions. In deciding, based on that legal analysis, to dismiss the counterclaims, the district court did not conduct a trial on the merits, much less impermissibly consolidate trial with the hearing on the preliminary motions.

The patients also attack the dismissal order as being "pithy to the point of being incomplete" and ask this court to vacate it and remand the case for further consideration. In support of that request, they rely on *Myers v. Gulf Oil Corporation*,[5] in which we held that a district court's explanation that the defendant should be granted summary judgment "because the Plaintiff has failed to state a claim on which relief can be granted" was insufficient to explain that court's reasoning. The patients' argument focuses on the length of the district court's dismissal order rather than on its content. Taken together, the two orders adequately present for our review both the actions taken by the district court and its reasons.

## III. Claims for Monetary Relief

Dr. Burzynski and the patients seek monetary damages from the United States, FDA, FDA employees Ewing and Miller (both individually and in their official capacities), and unknown agents of the United States and the FDA. We discuss these claims separately.

### A. Claims Against the Government

Neither the United States, its agencies, nor its officials acting in their official capacities, may be sued without the United States' specific consent.[6] The Federal Tort Claims Act[7] permits certain claims to be asserted against the United States, as sovereign, and its agents but exacts the filing of an administrative claim for relief as a jurisdictional prerequisite to suit. No such claim has been filed. Therefore, the district court properly dismissed the damage claims against the United States, the FDA, and federal officials acting in their official capacities. Because the requirement of administrative review is a jurisdictional requisite, it would not have been appropriate merely to stay the suit until a claim could

---

5. 731 F.2d 281, 283 (5th Cir.1984).

6. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941); *Zapata v. Smith*, 437 F.2d 1024, 1025 (5th Cir.1971); *Carter v. Seamans*, 411 F.2d 767, 770 (5th Cir.

1969), *cert. denied*, 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1970).

7. 28 U.S.C. § 2671, et seq. (1982).

be filed, as Burzynski sought, once the issue was raised.[8]

### B. Claims Against Individual Government Employees

In seeking monetary damages against the government employees as individuals, Dr. Burzynski and the patients asserted both common law tort claims and claims under the Constitution. All of the damages claims asserted against individual government employees related to and arose out of the application for and execution of the criminal search warrant for Dr. Burzynski's business premises, and all are barred by immunity doctrines.

### 1. Waiver of Immunity Defenses

■ Dr. Burzynski and the patients contend that the government cannot rely on immunity defenses for the individuals named as defendants because such affirmative defenses may not be raised by means of a motion to dismiss or for summary judgment. The circuit courts disagree whether the affirmative defenses listed in Fed.R.Civ.P. 8(c) must be asserted in the defendant's answer or may be raised for the first time in a motion to dismiss or other dispositive motion.[9] In *Funding Systems Leasing Corp. v. Pugh,* a panel of this court stated that a defendant may raise an affirmative defense by a motion for summary judgment only when that motion "is the initial pleading tendered by [the] defendant."[10] Although the rule quoted above suggests that any prior pleading will defeat the defendant's right to raise an affirmative defense in a summary judgment motion, in the context of the decision as a whole it becomes apparent that the *Funding Systems* opinion was referring only to pleadings responsive to the substantive issues charged. The *Funding Systems* decision itself specifically noted that the defendant in that case had failed

to allege his affirmative defense in any "responsive pleading."[11] The decision, therefore, did not address the issue whether prior pleadings that are unresponsive to the substance of the allegations should preclude the possibility of raising affirmative defenses in a subsequent responsive pleading. Because no other panel of this court has had occasion to apply the rule that *Funding Systems* sets forth, the proper interpretation of the rule remains undecided, and we adopt what we believe to be the most principled interpretation of the standard: An affirmative defense may be raised on a motion for summary judgment only if that motion is the first pleading responsive to the substance of the allegations.

■ Although in this case the government filed a brief memorandum in opposition to Dr. Burzynski's original counterclaim and several preliminary motions before filing its motion to dismiss or for summary judgment, none of those filings is a responsive "initial pleading" within the meaning of *Funding Systems.* The government's initial memorandum is not a "pleading" and did not purport to respond to the substantive charges of the counterclaim. It presented only a legal analysis of the procedural posture of the case, raising issues about whether the counterclaim was filed in accordance with the Federal Rules of Civil Procedure and about the propriety of using civil counterclaims as a means of hampering criminal investigations. Similarly, the government's ensuing motions— which are "pleadings" within the meaning of the Rules—were not responsive to the substance of the counterclaims, but sought only to preserve counter-defendants' rights pending preparation of an answer or dispositive motion. Because the government, therefore, set forth its affirmative argument in its first responsive pleading, it has preserved its immunity defenses.

**8.** *Gregory v. Mitchell,* 634 F.2d 199, 203–04 (5th Cir.1981).

**9.** *See* C. Wright and A. Miller, *Federal Practice and Procedure* § 1277, at 328–29 (1969). *Compare Williams v. Murdoch,* 330 F.2d 745 (3d Cir.1964); *Continental Collieries, Inc. v. Shober,* 130 F.2d 631 (3d Cir.1942) *with Eberle v. Sin-*

clair *Prairie Oil Co.,* 35 F.Supp. 296 (E.D.Okla. 1940), *aff'd,* 120 F.2d 746 (10th Cir.1941).

**10.** 530 F.2d 91, 96 (5th Cir.1976).

**11.** *Id.*

## 2. Common Law Tort Claims

■ Federal employees are absolutely immune from common law tort suits for damages arising out of the performance of either mandatory or discretionary acts that are, as the Supreme Court stated in Barr v. Matteo, "within the outer perimeter of the [employees'] line of duty."[12] This immunity extends even to allegedly malicious acts.[13]

■ It is difficult to sort out the common law claims of Dr. Burzynski and the patients from their constitutional claims. Reading the counterclaims as broadly as possible, however, it appears that, with respect to the application for and execution of the search warrant, Dr. Burzynski asserted common law claims for abuse of process and for some type of tortious interference with his relationship with his patients, while the patients asserted a common law claim for abuse of process.

Ewing's duties as a compliance officer with FDA included reviewing investigative records of FDA and other evidence gathered by FDA to determine whether there were apparent violations of the FDC Act or other laws, making recommendations for appropriate civil or criminal legal action, conducting investigations, and collecting of information and samples. FDA compliance officers and investigators also are required, in conjunction with a United States Marshal, to execute criminal search warrants. Moreover, Ewing was the person within FDA chiefly responsible for the investigation of Dr. Burzynski.

Acting upon information gathered in the course of previous FDA investigations of Dr. Burzynski and others, and upon information supplied to him by named individuals and confidential informants, Ewing, Miller, and other federal employees pursued a new investigation of Dr. Burzynski to determine if Dr. Burzynski had violated the Act and other federal criminal statutes by failing to adhere to the requirements of the permanent injunction entered by the district court in May 1983. That investigation included the application for and execution of the criminal search warrant.

The activities of Ewing, Miller, and the other federal employees with respect to the search warrant were clearly within the scope of their duties. Therefore, they are absolutely immune from suit for the common law torts allegedly committed in connection with the search warrant, and dismissal of the damage claims based on those alleged torts was proper.

## 3. Constitutional Tort Claims

■ In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,[14] the Supreme Court held that federal officers who, acting under color of their federal authority, but without a warrant, entered and searched the plaintiff's apartment and arrested him, could be personally sued for monetary damages for deprivation of the plaintiff's rights under the fourth amendment. The holding of *Bivens* was extended to deprivations of fifth amendment due process rights in *Butz v. Economou*,[15] to violations of the right to equal protection as embodied in the fifth amendment in *Davis v. Passman*,[16] and to the eighth amendment's prohibition against cruel and unusual punishment in *Carlson v. Green.*[17]

Shortly after its recognition of a right of action for constitutional torts under *Bivens*, the Supreme Court began to develop the defense of qualified immunity to protect federal employees against liability for,

---

**12.** *Barr v. Matteo*, 360 U.S. 564, 575, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434 (1959). *Accord Evans v. Wright*, 582 F.2d 20, 21 (5th Cir.1978).

**13.** *Barr*, 360 U.S. at 575, 79 S.Ct. 1341; *Norton v. McShane*, 332 F.2d 855, 858 (5th Cir.1964), *cert. denied*, 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274 (1965).

**14.** 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**15.** 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

**16.** 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).

**17.** 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980).

and the burden of defending themselves against, alleged violations of constitutional rights. As first formulated in *Butz v. Economou,* qualified immunity had both an objective and subjective element: the federal official was entitled to immunity if there were reasonable grounds to believe that the challenged conduct did not violate a constitutional right (the objective element) and the official undertook the challenged conduct in a good-faith belief that the conduct was valid (the subjective element).[18]

On further consideration, however, the Court in *Harlow v. Fitzgerald* stated, "[t]he subjective element of the good-faith defense frequently has proved incompatible with our admonition in *Butz* that insubstantial claims should not proceed to trial."[19] Therefore, the Court eliminated the subjective element of the qualified immunity defense. Government officials performing discretionary functions, it held, are shielded from liability for civil damages whenever their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.[20]

Reading Dr. Burzynski's counterclaim most broadly, it appears to allege that Ewing violated the fourth amendment by obtaining the criminal search warrant for Dr. Burzynski's business premises "to accomplish purposes outside the proper scope of a search warrant," i.e., "for the apparent ulterior purpose of forcing [Dr. Burzynski] out of business." The government contends, however, that the warrant was issued by an independent judicial officer, the United States Magistrate, and that under this court's decision in *Jureczki v. City of Seabrook, Texas,*[21] "[a] judge's determination of probable cause breaks the chain of causation and insulates the initiating party from liability."[22] Dr. Burzynski counters by correctly pointing out that the Supreme Court rejected the rationale underlying that broadly-stated rule in *Malley v. Briggs.*[23]

In *Malley,* the Court held that an officer may not rely on the judgment of a judicial officer in finding that probable cause exists if "a reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant."[24] This holding, however, does not signal a retreat from the principle that, to give rise to liability, the actions of a public official must be objectively unreasonable in the light of clearly established law. Malice, therefore, remains "irrelevant in obtaining a warrant where probable cause exists."[25]

Dr. Burzynski's counterclaim alleges no misstatements or omissions in Ewing's affidavit that would have obviated probable cause if corrected. Indeed, Dr. Burzynski in effect supported its correctness by testifying that, based on the affidavit as well as his own independent suspicions, he suspected that antineoplastons were being transported out of Texas, that the Institute has been obliged to refund hundreds of insurance overpayments resulting from insurance companies being billed for services already paid for by patients, and that on at least one occasion an insurance claim was submitted for an office visit when the patient did not actually come to the Institute.

Dr. Burzynski's counterclaim does contain an allegation that the search warrant

---

**18.** 438 U.S. at 495–98, 507, 98 S.Ct. at 2905–07, 2911.

**19.** *Harlow v. Fitzgerald,* 457 U.S. 800, 815–16, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982).

**20.** 457 U.S. at 817–18, 102 S.Ct. at 2737–38. *See also David v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 3018, 82 L.Ed.2d 139 (1984); *Mitchell v. Forsyth,* 472 U.S. 511, 535 n. 12, 105 S.Ct. 2806, 2820 n. 12, 86 L.Ed.2d 411 (1985); *Saldana v. Garza,* 684 F.2d 1159, 1163 (5th Cir.1982), *cert. denied,* 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983).

**21.** 760 F.2d 666, 668 (5th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1261, 89 L.Ed.2d 571 (1986).

**22.** *Id.* (citing *Smith v. Gonzales,* 670 F.2d 522, 526 (5th Cir.), *cert. denied,* 459 U.S. 1137, 103 S.Ct. 772, 74 L.Ed.2d 984 (1982)).

**23.** 475 U.S. 335, ——, 106 S.Ct. 1092, 1098–99, 89 L.Ed.2d 271 (1986).

**24.** *Id.* (footnote omitted).

**25.** *Jureczki,* 760 F.2d at 668.

"was not supported by affidavits and evidence sufficient to establish probable cause." Based on no more than this unsupported charge, and despite the admonition of the Supreme Court in *Franks v. Delaware* [26] that to mandate an evidentiary hearing such a charge must also assert deliberate falsehood or reckless disregard for truth and must be accompanied by an offer of proof, the district court allowed a lengthy cross-examination of Ewing regarding his affidavit. Nonetheless, the district court found no basis even to proceed with a hearing on the validity of the search warrant, much less to justify a finding that the warrant was not validly supported. In this circuit, once a government employee has asserted qualified immunity and established that the allegedly tortious acts were undertaken within the scope of his discretionary authority, the burden shifts to the party seeking damages to show that qualified immunity does not bar recovery. [27] Dr. Burzynski has failed to suggest any factual basis upon which a trier of fact could find that probable cause was lacking or that agent Ewing's action in seeking the search warrant was objectively unreasonable. Therefore, the individual defendants were entitled to have those charges against them dismissed.

In addition, both Dr. Burzynski and the patients asserted constitutional claims with respect to the government employees' execution of the warrant. Both Dr. Burzynski and the patients challenged the warrant as overly broad (not properly limited in scope), Dr. Burzynski alleging a fourth amendment violation and the patients a fifth amendment violation. Additionally, the patients alleged that seizure of their medical records was unreasonable, in violation of the fourth amendment, and infringed their constitutional rights to privacy, to life, and

to obtain medical treatment. Again, these claims could survive the government defenses of qualified immunity only if Dr. Burzynski and the patients demonstrated a reasonable basis to believe that the execution of the search warrant violated "clearly established law." [28] They simply failed to do so. According to the counter-claimants' own witnesses, the documents seized were only those described in the warrant. Since the seizure of these specific documents was thus authorized, the seizure was in accord with, rather than in contravention of, clearly established law.

The patients also assert that seizure of their treatment records, which belonged to Dr. Burzynski or the Institute and were in the possession of the Institute, invaded their right to privacy. That they have a privacy interest in such documents [29] does not establish the immunity of the documents from seizure. The patients do not cite a single case in which seizure of documents authorized by a warrant has been found to be an unconstitutional invasion of privacy. The absence of such citations is not surprising since a warrant issued upon "[p]rior review by a neutral and detached magistrate is the time-tested means of effectuating Fourth Amendment rights." [30] In any event, seizure of the patients' treatment records pursuant to a warrant did not violate clearly established law so as to subject the government agents to individual liability.

The patients also assert that seizure of their treatment records deprived them of their right to life and to medical treatment. This claim was unsupported by factual allegations creating any basis to believe that the treatment of patients would be substantially hindered. All of the parties agree that the records are available for

---

**26.** 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978).

**27.** *See Saldana v. Garza,* 684 F.2d at 1163 n. 14 (citing *Garris v. Rowland,* 678 F.2d 1264, 1271 (5th Cir.1982); *Rheaume v. Tex. Dept. of Public Safety,* 666 F.2d 925, 930 (5th Cir.1982); *United Carolina Bank v. Board of Regents,* 665 F.2d 553, 562 (5th Cir.1982); *Baker v. Norman,* 651 F.2d 1107, 1121 (5th Cir.1981)).

**28.** *Harlow v. Fitzgerald,* 457 U.S. at 818, 102 S.Ct. at 2738.

**29.** *See In re Search Warrant,* 810 F.2d 67, 71 (3d Cir.1987).

**30.** *United States v. United States District Court, E.D. Mich.,* 407 U.S. 297, 318, 92 S.Ct. 2125, 2137, 32 L.Ed.2d 752 (1972).

copying. As the district court determined below, the patients have shown no basis to believe that "an opportunity would not be made available to [Dr. Burzynski] to secure a copy of those documents in sufficient time to treat his patients effectively...."

In sum, the federal employees involved in obtaining the warrant for the search of the business premises occupied by Dr. Burzynski and in executing that warrant followed established constitutional procedures. They violated no norms of clearly established law. As federal agents performing discretionary functions within the scope of their duties, they were entitled to qualified immunity shielding them from liability for their acts. The district court's dismissal of the constitutional claims against the federal employees was therefore proper.

## IV. Injunctive Relief

The counterclaims requested injunctions requiring return of the records seized pursuant to the search warrant, prohibiting use of the seized records by the government, prohibiting government contact with patients and their insurance carriers, prohibiting the government from interfering with Dr. Burzynski's treatment of the patients with antineoplastons, and prohibiting the government from disseminating allegedly false or misleading information regarding antineoplastons.

### A. Return of the Seized Records

Fed.R.Crim.Proc. 41(e) provides the avenue by which a person may obtain return of property seized by the government. Because neither Dr. Burzynski nor the patients stated any basis for a finding that the records were illegally seized and the patients did not even allege a basis for finding that were entitled to lawful possession of the records, the district court was required to dismiss the injunctive claims for return of the records, whether under Rule 41(e) or its general equity jurisdiction.

Both the patients and Dr. Burzynski acknowledged that the medical records were seized from Dr. Burzynski's business premises. On appeal, the patients state that their "property interest [is] in the information contained in their medical treatment records." Thus, the patients' own allegations demonstrate that they were not "entitled to lawful possession of the property" which was seized and, therefore, that they did not have standing to seek return of the seized records.

Since the medical records were seized from Dr. Burzynski's business premises, the patients would have had standing to challenge the search and seizure only if they had a "legitimate expectation of privacy in [those] premises," a business belonging to others.[31] Even if the seized medical records had been the property of the patients, "[t]he fact that [their] property became the 'target' of the search is irrelevant." [32]

■ The patients attempt to ground their asserted privacy interest in their medical records on a physician-patient privilege as codified in Texas state law, Tex. Rev.Civ.Stat.Ann. art. 4495b § 5.08(b) (Vernon Supp.1985). The seizure of the records, however, took place pursuant to a search warrant as part of a criminal investigation, and was therefore exempt from the Texas shield. In the context of federal criminal proceedings, no physician-patient privilege exists.[33] Therefore, the patients had no legitimate expectation of privacy in the records maintained by Dr. Burzynski that could be asserted against the search warrant and no standing to seek the return of the records.

■ Even if the patients had alleged circumstances sufficient to afford them standing to seek return of the medical records, they alleged no basis on which the district court could have found the seizure of the records unlawful. The patients ar-

31. *Dickens v. Lewis,* 750 F.2d 1251, 1254 (5th Cir.1984).

32. *Id.* (citing *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 426–27, 58 L.Ed.2d 387 (1978)).

33. *United States v. Meagher,* 531 F.2d 752, 753 (5th Cir.), *cert. denied,* 429 U.S. 853, 97 S.Ct. 146, 50 L.Ed.2d 128 (1976); *United States v. Mancuso,* 444 F.2d 691, 694–95 (5th Cir.1971).

gue that their sole challenge to the warrant authorizing the seizure was to the face of the warrant, not the supporting affidavit. Yet the only specific deficiency alleged by the patients was that the warrant authorized the seizure of virtually all medical records at the Institute while the supporting affidavit stated that patients' true home addresses were recorded only on patient billing and insurance records. The patients' argument rests on the premise that the only purpose of the warrant was to "ascertain evidence of interstate shipment of antineoplastons." The warrant was sought, however, to authorize the seizure of evidence of numerous criminal offenses in addition to interstate distribution of antineoplastons. Since the seized medical records were relevant to all of those possible violations the warrant was facially valid, and the patients stated no basis for the district court to find seizure of the medical records unlawful, a prerequisite to mandating their return.[34]

Unlike the patients, Dr. Burzynski did attack the affidavit supporting the warrant. However, he neither alleged nor proved a single fact on which the district court could have found the affidavit deficient and the resulting warrant and seizure unlawful.

### B. Use of the Seized Records

■ Both the patients and Dr. Burzynski seek to enjoin the government from providing the records seized pursuant to the search warrant to any other agents or agencies of the United States Government or to any commercial entity or to any other entity or person. While not alleging any basis to believe that the government had made improper use of the seized records or was likely to do so, Dr. Burzynski and the patients sought an injunction that, if granted, would have totally prevented the government from pursuing its criminal investigation of Dr. Burzynski insofar as the

seized records constituted evidence of crimes or suggested avenues of investigation.

As an incident to the separation of powers founded in the Constitution, "the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions."[35] Furthermore, to the extent that an injunction against providing the seized documents to "any other person or entity" would prohibit presenting the documents to a grand jury, such an injunction would improperly interfere with the mission of the grand jury which "must be free to pursue its investigations unhindered by external influence or supervision...."[36] "The Fifth Amendment guarantees that no civilian may be brought to trial for an infamous crime 'unless on a presentment or indictment of a Grand Jury.' This constitutional guarantee presupposes an investigative body 'acting independently of either prosecuting attorney or judge....'"[37]

Since neither Dr. Burzynski nor the patients alleged even one arguably improper use of the seized records, the district court had no proper choice but to dismiss the requests to enjoin use of the seized records by the government.

### C. Communications with Patients or Insurance Companies

■ Similarly, the requests of Dr. Burzynski and the patients that the government be enjoined from communicating with Dr. Burzynski's present and former patients and their insurance carriers, would, if granted, have impeded or totally frustrated the government's ability to pursue its investigation of, among other things, interstate distribution of antineoplastons, fraudulent over-billing and double-billing of insurance companies, and false statements to the government. Such an injunction

---

**34.** Fed.R.Crim.P. 41(e).

**35.** *United States v. Cox,* 342 F.2d 167, 171 (5th Cir.) (en banc), *cert. denied,* 381 U.S. 935, 85 S.Ct. 1767 (1965).

**36.** *United States v. Dionisio,* 410 U.S. 1, 17, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1973).

**37.** *Id.* at 16, 93 S.Ct. at 772 (quoting *Stirone v. United States,* 361 U.S. 212, 218, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960)).

would obviously have interfered with "the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions." [38]

#### D. Alleged Interference with Treatment of Patients and Dissemination of False Information

Dr. Burzynski and the patients also asked the district court to enjoin the government from interfering with Dr. Burzynski's treatment of the patients with antineoplastons, both intrastate and interstate.

The interference alleged included the seizure of patient records pursuant to the search warrant, the refusal of the FDA to grant investigational new drug status (IND) to the form of antineoplastons Dr. Burzynski is currently using, and the dissemination of false or misleading information about Dr. Burzynski and his treatment to insurance companies and current or prospective patients. Many of these claims are patently groundless. Just as the allegations of unlawful seizure of patient records cannot support injunctive relief requiring return of the seized records, they cannot form a cognizable basis for claiming that the government has or would interfere impermissibly with Dr. Burzynski's treatment of patients solely within the State of Texas. There simply has been no genuine issue of such a threat raised.

Similarly, neither Dr. Burzynski nor his patients have alleged facts suggesting that the FDA has acted improperly by denying antineoplaston A10 IND status. Although, in his brief before this court, Dr. Burzynski contends that he has never argued that he is entitled to IND status for his new drug but only that the FDA has treated his application differently than other IND applications, the language of his counterclaims belies that assertion. In his countercomplaint, Dr. Burzynski asserted

that "Dr. Burzynski's patients will be irreparably harmed if this Court [the district court] fails to require the FDA to grant IND status to the Antineoplaston A10 compound ... in that many patients who could be helped by the use of antineoplastons will be denied their Constitutional right of access to Dr. Burzynski's treatment...." The district court, therefore, construed his counterclaim correctly.

Dr. Burzynski's own testimony demonstrates that the FDA notified him in February 1984 that it found deficiencies in his IND application and required additional data. He candidly admits that he has neither provided the data requested nor explained to the FDA his reasons for considering that data unnecessary. Thus, he has failed to make a good faith effort to obtain an IND or to exhaust his administrative remedies. His claim for injunctive relief with respect to his IND was, therefore, properly dismissed. [39]

The patients indirectly challenge FDA's action with respect to the IND, alleging that their "constitutional right to travel freely between the states ... is being infringed by the Government and its agents through their continued refusal to allow the interstate distribution and shipment of antineoplastons." Because Dr. Burzynski and his patients have failed to allege facts suggesting that IND status was improperly withheld, this claim was also dismissed properly. Moreover, to the extent that the patients' counterclaim can be construed as a challenge to the authority of the FDA to bar interstate distribution of unapproved drugs, the claim is frivolous. [40]

The patients' separate claim for injunctive relief against interference with interstate distribution of antineoplastons based on the asserted "constitutional right to obtain medical treatment that is encompassed by their right to privacy," was also

---

**38.** *United States v. Cox,* 342 F.2d at 171.

**39.** *See Rutherford v. American Medical Association,* 379 F.2d 641 (7th Cir.1967), *cert. denied,* 389 U.S. 1043, 89 S.Ct. 787, 19 L.Ed.2d 835 (1968).

**40.** *See United States v. Lehman,* 464 F.2d 68, 73–74 (5th Cir.), *cert. denied,* 409 U.S. 950, 93 S.Ct. 271, 34 L.Ed.2d 220 (1972).

unsupportable. The patients asserted that they should be free to obtain antineoplastons interstate because of "the unavailability of any other treatment that would be effective in treating their cancer." Similar claims were raised and rejected in *United States v. Rutherford.*[41]

As in the present case, the plaintiffs in *Rutherford* were cancer patients, alleged to be terminally ill, desiring treatment with an unapproved drug, and arguing that the restrictions on interstate distribution of new drugs imposed by the Act should not be allowed to interfere with their access to the drug. The Supreme Court rejected the patients' claims. The Court agreed with FDA that the new drug approval provisions of the Food, Drug, and Cosmetic Act specifically applied to the situation presented.

■ In one respect, however, the fact that Dr. Burzynski and his patients were denied any opportunity for discovery has unfairly prejudiced their opportunity to allege facts in support of counterclaims that may entitle them to relief. The district court found that at least two statements made by Ewing in response to inquiries about Dr. Burzynski and his treatment were "near to inappropriate," exceeded "his duties and responsibilities as an officer of the FDA," and misled his audience by asserting, as established fact, charges still subject to investigation. The district court also noted that, by showing that such statements were made to at least one insurance company, Dr. Burzynski and his patients demonstrated that "the above conduct has had an impact on their ability to treat patients because over fifty percent of [the Institute's] income is derived from insurance payments." Whether additional examples of such questionable conduct exist and, if so, in numbers justifying injunctive relief can only be discerned through discovery. The claim seeking an injunction to stop the government from disseminating false or misleading information to outside parties, therefore, should not have been dismissed until Dr. Burzynski and his patients had an opportunity to discover the scope of the problem and to provide evidence that an injunction is necessary.

Of course, nothing in this opinion should be construed as suggesting that the FDA acted improperly by expressing its position with regard to the status of antineoplastons, i.e., that they are drugs that may not lawfully be introduced into interstate commerce because they are not approved by the FDA or the subject of an acceptable IND. Such information is not false, misleading, or inaccurate.

The FDA also cannot be required to communicate what the patients view as "favorable" information. According to Dr. Burzynski and some of his patients, relevant "favorable information" is that antineoplaston therapy has proved beneficial to some cancer patients. The views of Dr. Burzynski and his patients, however, do not constitute "favorable" information on which FDA may properly rely. "[W]hen the subject of investigation is the existence of cancer, the personal testimony of the lay sufferer is entitled to no weight...."[42] Furthermore, as the Supreme Court found in *Weinberger v. Hynson, Westcott and Dunning, Inc.,*[43]:

[FDA's] strict and demanding standards, barring anecdotal evidence indicating that doctors "believe" in the efficacy of a drug, are amply justified by the legislative history [of the Food, Drug, and Cosmetic Act]. The hearings underlying the 1962 Act show a marked concern that impressions or beliefs of physicians, no matter how fervently held, are treacherous.

**V. The Civil Contempt Claim Against the Government and its Employees**

■ The same conduct by the government and its employees alleged as the basis

---

**41.** 442 U.S. 544, 99 S.Ct. 2470, 61 L.Ed.2d 68 (1979).

**42.** *United States v. Hoxsey Cancer Clinic,* 198 F.2d 273, 280 (5th Cir.1952), *cert. denied,* 346 U.S. 897, 74 S.Ct. 220, 98 L.Ed. 398 (1953).

**43.** 412 U.S. 609, 619, 93 S.Ct. 2469, 2478, 37 L.Ed.2d 207 (1973) (footnote omitted).

for the damages and injunctive claims of Dr. Burzynski and the patients formed the basis of their requests to hold the government and its employees in civil contempt. Dr. Burzynski and the patients apparently do not appeal from the dismissal of their civil contempt claims. Their briefs to this court assign no error to the dismissal of those claims. But, even if they do appeal this ruling, the requests for a finding of civil contempt were also without foundation, and the district court's dismissal of those claims was proper.

The permanent injunction, of which the government and its employees were alleged to be in contempt, imposed no restrictions or obligations on the government or its employees, except that FDA was directed to review, evaluate, and appraise the manufacturing practices of the Burzynski Research Institute and promptly advise Dr. Burzynski of any violations of current good manufacturing practices. Although neither Dr. Burzynski nor the patients raised that issue in their counterclaims as a basis for a contempt citation or any other relief, the issue was raised at the hearing on Dr. Burzynski's motion for a temporary restraining order. However, as the record shows, FDA has advised Dr. Burzynski of its position with respect to his manufacturing practices, and so is in compliance with its obligations under the permanent injunction.

## VI.

The patients who appear in this suit are in a critical plight. They seek any treatment that offers them the slightest hope, for they think it better to exhaust any possibility than to resign themselves to a fate that seems otherwise certain. The FDA has been assigned the duty of protecting such desperate persons from deception, abuse, and exploitation and of assuring that the treatment they are given is safe and effective. It cannot perform these tasks if those professing to offer new cures refuse to work with the system and obey the law, whether their motives be noble or ill. This court, therefore, must not allow sympathy for the plight of persons suffering from cancer to cause us to interfere hastily with the mission of FDA or to distract us from our duty to uphold the law.

For the reasons given, the judgment of the district court is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.