**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 27, 2014**

# In the Court of Appeals of Georgia

A13A2413. DOBSON v. MATT OWENS LOGGING, INC.

BRANCH, Judge.

Defendant David Dobson brings this appeal in the wake of a jury's verdict in favor of plaintiff Matt Owens Logging, Inc. (Owens), which had agreed to buy and cut timber on land owned by Dobson. On appeal from the denial of his motion for judgment notwithstanding the verdict, Dobson argues that the trial court erred when it denied his motion in limine concerning evidence that the parties orally modified their written contract and when it enforced the oral modification as partially performed. We find no error and affirm.

"The standard for granting a directed verdict [and] a judgment notwithstanding the verdict are the same. Where there is no conflict in the evidence as to any material issue, and the evidence introduced, with all reasonable deductions therefrom, shall

demand a particular verdict, such verdict shall be directed." (Citation and punctuation omitted.) *South Fulton Med. Center v. Poe*, 224 Ga. App. 107, 108 (1) (480 SE2d 40) (1996); see also *Aldworth Co. v. England*, 281 Ga. 197, 201 (2) (637 SE2d 198) (2006) (a party seeking a judgment notwithstanding the verdict must have moved for directed verdict at trial).

Viewed in favor of the jury's verdict, the record shows that on December 28, 2009, Owens entered into a written agreement to harvest standing timber on Dobson's land in Gordon County "on or before February 1, 2011," in exchange for an advance payment of $85,000. The agreement provided that the "total payment price" for the timber "shall be determined at the prices and tonnage" listed on an attachment to the agreement. The agreement provided that Dobson would grant Owens "a cutting extension if very severe and unusual weather [or] health or equipment problems occur during the period of" the agreement, and that the extension could last for "up to a three month period of time." The agreement also provided that "[a]fter the initial advance has been covered by receipts[,] [Owens] must issue a check for [any] additional tonnage at least every two weeks to [Dobson]," and that "timber harvesting operations will not take place when soil conditions in marked woodland are usually [sic] wet."

Owens was responsible for using the "very best" land management practices during its operations on the site.

After Owens began work on the property in December 2010, rain and a seven- or eight-inch snowfall in January 2011 led him to the conclusion that additional logging might harm the property and violate the agreement. When Owens asked Dobson for an extension, Dobson agreed on condition that Owens send him "a check for what [Owens] thought the tract would cut, over what [Owens] had already paid him." The two agreed that in exchange for an extension until "the weather permitted," Owens would issue a check for $2000 not required under the written contract. There was no discussion of any end date for this extension. In late January, Owens sent Dobson a check for that amount as well as a request that Dobson confirm a six-month extension in writing. Dobson deposited the check but did not respond to the request for a written confirmation of the six-month extension.

On May 1, 2011, exactly three months after the termination of the contract's original term, Dobson sent Owens an email that "sufficient time ha[d] passed from February 1 for additional timbering time, so I now want to end timbering on my lands now." Owens responded that he had been "waiting for dry weather," having had "an extremely wet spring," that he had "a lot of money tied up on [Dobson's] land that

[he] need[ed] to get back," and that Dobson had "never told [Owens] a deadline." Dobson responded that he had "let this go another full three months until May 1, but that's it," and that he had never agreed to any additional extension. At the time Owens ceased operations at the site, he had recouped approximately $38,000 of the $87,000 he had paid to Dobson. Owens later estimated that approximately 130 acres of timber with a mill value of $253,000 remained unharvested on Dobson's land.

On July 28, 2011, Owens filed suit for breach of contract, unjust enrichment, conversion, fraud, negligent misrepresentation, injunctive relief, and attorney fees. Dobson answered and counterclaimed for breach of contract and property damage. The parties proceeded to trial in September 2012. At the close of his evidence, Owens withdrew his claim for injunctive relief, and the trial court struck the claim for unjust enrichment. At the close of all the evidence, the trial court granted Dobson a directed verdict on the issues of fraud, misrepresentation, and attorney fees. The trial court denied Dobson's motion for directed verdict on the breach of contract and conversion claims as well as Owens's motion on Dobson's counterclaim. The jury returned a verdict in favor of Owens in the amounts of $80,619.92 for breach of contract and $2,000 for conversion, and also found Owens not liable for Dobson's counterclaim.

Dobson argues that the trial court erred when it denied his motions in limine and for judgment notwithstanding the verdict because any oral modification of the contract was unenforceable under the statute of frauds. We disagree.

Under OCGA § 13-5-30 (4), Georgia's statute of frauds, a contract "for sale of lands, or any interest in, or concerning lands" must be "in writing and signed by the party to be charged therewith." Specifically, "[a] contract to purchase the standing timber upon described land, to be sawed into lumber by the purchaser and sold, and a certain percentage of the proceeds paid to the owner of the land as compensation for the timber, is a sale of an interest in land, and, under the statute of frauds, is required to be in writing." *Norman & Griffin v. Shealey*, 33 Ga. App. 534 (126 SE2d 887) (1925).

As Owens points out, however, an oral modification to a written contract subject to the statute of frauds may be effective if "the contract as so modified has been acted on or performed by one of the parties." *Scott v. Ryder Truck Lines*, 120 Ga. App. 819, 822 (1) (172 SE2d 365) (1969), citing *Planters Cotton-Oil Co. v. Bell*, 54 Ga. App. 433, 435 (188 SE 41) (1936). This result under the statute of frauds comports with the general rule that "a mutual departure from the terms of an agreement results in a quasi new agreement suspending the original terms of the

5

agreement until one party has given the other reasonable notice of its intent to rely on the original terms." (Footnote omitted.) *Vakilzadeh Enterprises v. Housing Auth. of DeKalb*, 281 Ga. App. 203, 206 (635 SE2d 825) (2006), citing OCGA § 13-4-4 (where parties depart from a contract's "terms and pay or receive money under such departure," reasonable notice must be given "before either can recover for failure to pursue the letter of the agreement"). "The question whether the parties' mutual conduct caused a waiver and effected a quasi-new agreement ordinarily is a question for the jury." (Punctuation and footnote omitted.) *Vakilzadeh*, 281 Ga. App. at 206.

Here, some evidence authorized the jury to conclude that the purchaser Owens and the seller Dobson orally modified their previous written agreement and that Owens made and Dobson accepted payment as consideration for that modification. Specifically, Owens's testimony and other evidence authorized the conclusions that Dobson agreed to an indefinite extension until "weather permitted" and therefore beyond the three-month extension authorized under the written contract in exchange for an additional payment of $2,000 and that Dobson was solely responsible for Owens's failure to work after May 1, 2011. It follows that the trial court did not err when it admitted evidence concerning the parties' modification of the written agreement and when it denied Dobson's motion for judgment notwithstanding the

6

verdict. *Scott*, 120 Ga. App. at 821-822 (1) (reversing grant of summary judgment to common carrier when movant had not produced evidence to refute non-movant's allegations that a contract had been orally modified and partially performed such that the statute of frauds was satisfied); *Vakilzadeh*, 281 Ga. App. at 206 (reversing grant of summary judgment when some evidence showed that purchaser waived objection to contractor's noncompliance with written provision of contract "without first giving [the contractor] notice of its intent to rely on [the written] provision").

*Judgment affirmed. Phipps, C. J., and Ellington, P. J., concur*.