**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 30, 2016**

# In the Court of Appeals of Georgia

A15A2375. AGSOUTH FARM CREDIT, ACA v. GOWEN TIMBER COMPANY, INC.

BRANCH, Judge.

On appeal from a jury verdict for defendant Gowen Timber Company (Gowen Timber) in this action for timber conversion, plaintiff AgSouth Farm Credit, ACA (AgSouth) argues that the trial court erred when it denied AgSouth's motion for judgment notwithstanding the verdict because no evidence showed that Gowen Timber received written consent to cut the timber at issue. AgSouth also argues that the trial court erred when it denied its motions in limine to exclude parol evidence concerning AgSouth's alleged consent to Gowen Timber's cutting and other topics. We agree that the trial court erred when it admitted parol evidence as to AgSouth's alleged consent, which the jury apparently considered in reaching a verdict for Gowen

Timber. We therefore reverse the trial court's denials of AgSouth's motions in limine and for judgment notwithstanding the verdict as to liability, but we order a new trial as to damages, interest, and attorney fees.

"The jury is the final arbiter of the facts, and the verdict must be construed by the trial and appellate courts in the light most favorable to upholding [that] verdict." *Wilmock, Inc. v. French*, 185 Ga. App. 259, 261 (1) (363 SE2d 789) (1987) (citation and punctuation omitted). So viewed, the record shows that in November 2012, AgSouth sued Gowen Timber for timber conversion pursuant to OCGA § 51-12-51 (a), which provides that a holder of "legal title" to "an interest in land as security for debt" may recover "the unpaid portion of the secured indebtedness, interest thereon, and a reasonable attorney's fee" from any person who converts "trees growing or grown on such land" to his own uses "without the written consent" of the secured party. The "unpaid portion of the secured indebtedness" at issue in this case arose after George Gowen and Shirley Bluff, LLC defaulted on the residue of a $2 million loan first extended by AgSouth on July 29, 2009. In exchange for the loan, George Gowen and Shirley Bluff provided AgSouth with a promissory note, a deed to secure the debt in favor of AgSouth, and a security agreement. By means of the deed to secure debt, which was signed by the members of Shirley Bluff, LLC and George

2

Gowen individually, Shirley Bluff, LLC conveyed a 1,057-acre parcel of land in Charlton County, known as the Shirley Bluff tract, as collateral for the loan. The deed provided in relevant part that the borrowers "will not, *except with the written consent of [AgSouth,]* cut, use or remove, or permit the cutting, use or removal of, any timber or trees on [the parcel] for sawmill, turpentine or other purposes, except for firewood and other ordinary farm purposes." (Emphasis supplied.) The deed also contained a so-called "dragnet"[1] provision to secure AgSouth's lien as to "all renewals, . . . extensions, refinances, modifications, or other rearrangements thereof"; that any agreement by the lender to such modifications "shall not discharge the lien of this security deed[,] which is to remain in full force and effect until the total indebtedness secured hereby has been paid in full"; and that in the event of default, the borrowers agreed "to pay reasonable attorney[ ] fees of not less than 10% of the amount secured," as well as costs. The security agreement, which was also signed by the members of Shirley Bluff, LLC and George Gowen individually, identified the collateral securing the loan as "[a]ll merchantable or pre-merchantable standing, felled and harvested pine, hardwood, or other timber growing or to be planted" on the

---

[1] See *Martin v. Fairburn Banking Co.*, 218 Ga. App. 803, 804 (3) (463 SE2d 507) (1995) (describing and enforcing dragnet provision in original security deed).

3

property. Also on July 29, 2009, Gowen Oil Company, Inc., executed a promissory note in favor of Shirley Bluff, which Shirley Bluff assigned to AgSouth with the understanding that Gowen Oil would make the payments on the loan from AgSouth based on the recovery Gowen Oil anticipated in certain lawsuits.

Although George Gowen, the longtime owner of the Shirley Bluff tract, died before the trial in this case, AgSouth's loan officer Dan Good testified that George Gowen knew at the July 2009 closing that he needed written consent to harvest timber from the Shirley Bluff property. Good acknowledged, however, that at the same closing, given George Gowen's and his family's longstanding ownership of the Shirley Bluff tract, and "despite it being [AgSouth's] collateral," George Gowen claimed "basically exclusive rights to cut and do what he wanted to with" the property. Some evidence thus shows that at the 2009 closing, George Gowen and Good agreed that George Gowen could "cut[ ] [his] trees so long as [he did] it in accordance with good timber management practices." George Gowen did not request or obtain a written modification of the terms of the loan documents before signing them, however. On July 30, 2009, the day after the closing, the deed to secure debt and the security agreement were recorded in Charlton County, with Uniform Commercial Code financing statements also recorded the same day.

4

Good visited the property twice between the original August 2009 closing and the loan's first renewal in August 2010. On the first of these visits, which occurred on or around February 1, 2010, Good walked two or three hundred yards on the property. On the second visit, which occurred on or around the original loan maturation date of August 1, 2010, George Gowen and Good drove through the property with George's son Curtis in the back seat. Although Good testified at trial that he did not notice any evidence of timber cutting or thinning on either of these visits, he admitted that the parties "talked about timber" on the second occasion. Curtis Gowen testified that his father told Good about his thinning of the Shirley Bluff property on Good's second visit and that Good approved of the thinning. Documentary evidence showed that 297 loads of timber had been harvested from the property by August 2010. George Gowen's son Doug e-mailed Good that month that the family "had only cut a small amount of timber" and that his father was "adamant" that "he wanted the leniency to cut some timber without having to apply it to the bank note."

As the parties prepared for a second renewal in the summer of 2011, AgSouth's review of the Shirley Bluff 2010 tax return showed that Gowen Timber[2] had harvested and had paid Shirley Bluff, LLC for $144,500 worth of Shirley Bluff timber during 2010.[3] At trial, Gowen Timber's managing officer and co-owner, Alvin Hopkins, confirmed that the 2010 harvest was done without AgSouth's written consent. Before AgSouth renewed the loan for a second time on August 31, 2011, AgSouth therefore required Shirley Bluff and George Gowen to make a principal reduction of $150,000 "to make good on th[e] timber harvest" already taken, as reflected in the second, 2011 renewal of the note and deed.

In an e-mail written on August 26, 2011, five days before the second renewal, Good told Doug Gowen that he "need[ed] to get" documents "in[to] [AgSouth's] loan committee[']s hands" on the following Monday "so that we can close Tuesday or Wed[nesday] AM." Good wrote that his goal was to provide "[j]ust a little bit of something to make [the] loan committee feel confident that [the] loan will pay off soon[,] or at least pay down – below $1 million at least." Good's email went on:

---

[2] Gowen Timber was not a party to the 2009 loan documents or any of the renewals.

[3] Shirley Bluff's 2009 tax return confirmed that more than $80,000 in timber was harvested in that year.

6

I'm going to try and justify the [timber] harvest to say it was used to make last year['s] payments and interest and hope it flys [sic]. When we first closed [the] loan [in 2009,] I expected it would pay off with[in] 12-months. I told your Dad tha[t] thinning, etc. would be OK, [but] I had no idea he would clear-cut 80 acres.

The 2011 renewal documents, which were signed by George Gowen, Shirley Bluff LLC, and Gowen Oil a few days later, specified that the debtors would provide "a complete accounting of all timber removed from the property within seven days of the renewal," that "no timber [could] be removed without prior written consent" of AgSouth, and that AgSouth reserved the right to pursue defendants "for conversion of the collateral" should they not comply with the terms and conditions of the renewal. Although Good and George Gowen again discussed thinning procedures at closing, Good again did not provide any written consent to harvest timber, and there is no indication that George Gowen provided any accounting to AgSouth after the 2011 closing.

As the parties negotiated for a third renewal in August 2012, AgSouth reviewed a 2011 tax return from Shirley Bluff, LLC indicating that Gowen Timber had again harvested timber that year, for which it paid Shirley Bluff, LLC $276,523.40. Alvin Hopkins testified that by the end of 2011, Gowen Timber had

7

harvested timber from and clear-cut approximately 200 acres of the Shirley Bluff property without AgSouth's written consent. Two AgSouth officers, including Good, testified that AgSouth never received any accounting of the 2011 harvest other than the tax returns later received in the course of the August 2012 renewal negotiations.

The parties were unable to agree to a third renewal, and the loan went into default in August 2012. AgSouth gave George Gowen, Shirley Bluff, LLC, and Gowen Oil notice of the default as well as its intention to collect attorney fees under OCGA § 13-1-11. AgSouth also obtained an appraisal valuing the property at $2,000,000. In anticipation of a foreclosure sale, AgSouth also prepared a "Bid Rationale" that valued the outstanding principal balance at $1,876,150.80, interest at $62,851.04, late charges at $10,000, appraisal costs at $6,500, and attorney fees at $193,925.18, for an estimated total claim of $2,149,427.02. AgSouth subtracted $421,023.63, or the amount paid by Gowen Timber to Shirley Bluff, LLC for the timber harvested in 2010 and 2011, from this estimate to reach AgSouth's planned "net bid" of $1,728,403.29. AgSouth's counsel recommended this strategy to his client as "leav[ing] the amount of the actual unauthorized timber sale as the amount owing assuming AgSouth acquires at this bid" and "the best method to preserve the maximum amount of [timber conversion] claim against" Gowen Timber. AgSouth

8

then acquired the Shirley Bluff property as planned by non-judicial foreclosure in November 2012 for $1,728,403.29. Shortly afterward, AgSouth sold the property to a third party for $1,730,000, or slightly more than its successful foreclosure bid.

AgSouth did not pursue a deficiency judgment against Shirley Bluff, LLC because that entity's only asset was the Shirley Bluff property. Instead, on November 26, 2012, AgSouth filed this timber conversion action against Gowen Timber for $421,023.63, or the amount paid by Gowen Timber to Shirley Bluff, LLC for the value of the 2010 and 2011 timber. Gowen Timber answered and filed a third-party complaint against Shirley Bluff, five members of the Gowen family, and the estate of George Gowen. The trial court denied both parties' motions for summary judgment, finding that "an issue of fact remain[ed] as to the amount owed, if any, of the unpaid portion of the secured indebtedness held by" AgSouth. AgSouth then filed motions in limine to exclude evidence on topics including the value of the Shirley Bluff property and AgSouth's oral consent to harvest timber. In a detailed order, the trial court initially granted AgSouth's motions on the ground that any "alleged oral consent" was not relevant "to show compliance with the timber conversion statute" or "to show an oral modification of the written loan contract." On Gowen Timber's motion for reconsideration, however, the trial court reversed itself and authorized the

9

admission of evidence showing "any alleged oral consent given by AgSouth to harvest timber[.]"

After the trial court denied both parties' motions for directed verdict, a jury considered whether Gowen Timber was liable for the conversion of the Shirley Bluff timber. In the course of its deliberations, the jury asked the trial court whether "the testimony of [a] witness" could "override the [terms of the] signed legal document." The trial court answered the jury's question in the affirmative. The jury later returned a verdict in favor of Gowen Timber. The trial court denied AgSouth's motions for judgment notwithstanding the verdict, entered judgment on the verdict, and denied AgSouth's motion for new trial. This appeal followed.

1. AgSouth first argues that the trial court erred when it denied AgSouth's motion for summary judgment as to Gowen Timber's liability for converting the Shirley Bluff timber. But "'it is well settled that after verdict and judgment, it is too late to review a judgment denying a summary judgment [because] that judgment becomes moot when the court reviews the evidence upon the trial of the case.'" *Malcom v. Morgan County Bd. of Tax Assessors*, 308 Ga. App. 61 (706 SE2d 583) (2011), quoting *Self v. Hall*, 233 Ga. App. 330, 331 (503 SE2d 918) (1998). The only exception to the rule is that

10

if the legal issues raised and resolved in denying the motion for summary judgment were not considered at trial, then the denial of the motion is not rendered moot by the verdict and judgment. Under such circumstances, a party may appeal the denial of summary judgment as part of the party's direct appeal from the final judgment, and the denial will be reviewed and determined by this Court.

*Coregis Ins. Co. v. Nelson*, 282 Ga. App. 488, 489 (1) (639 SE2d 365) (2006) (citations and punctuation omitted). The exception does not apply here. AgSouth's case went to trial with the issue of AgSouth's consent squarely before the jury, which entered a verdict that was accepted by the trial court. "[B]ecause the legal issue raised and resolved in denying the motion for summary judgment was considered at trial," AgSouth's motion for summary judgment is moot. *One Bluff Drive, LLC v. K.A.P., Inc.*, 330 Ga. App. 45, 51 (2) (766 SE2d 508) (2014).

2. AgSouth's principal argument on appeal is that the trial court erred when it denied its motions in limine and for judgment notwithstanding the verdict because (a) undisputed evidence showed that Gowen Timber cut timber to which AgSouth held legal title by virtue of its security interest in the Shirley Bluff property and (b) it did not give Gowen Timber written consent to cut timber, which was required under both

11

the timber conversion statute and the original loan documents. We agree with these contentions.

In order to prevail on its motion for judgment notwithstanding the verdict, AgSouth is obliged to show "that there was no conflict in the evidence as to any material issue and [that] the evidence introduced, with all reasonable deductions therefrom, demanded the verdict sought." *Harrouk v. Fierman*, 291 Ga. App. 818, 820 (1) (662 SE2d 892) (2008) (citation and punctuation omitted). See also OCGA § 9-11-50 (a); *South Fulton Med. Center v. Poe*, 224 Ga. App. 107, 108 (1) (480 SE2d 40) (1996) (standards of review for directed verdict and judgment notwithstanding the verdict are the same). "We review a trial court's ruling on a motion in limine for abuse of discretion. A motion in limine is properly granted when there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial." *Hankla v. Jackson*, 305 Ga. App. 391, 392 (1) (699 SE2d 610) (2010) (punctuation and footnote omitted). "[M]otions in limine should only be granted with great care and when there is no circumstance under which the evidence at issue could be admissible at trial." *One Bluff Drive*, 330 Ga. App. at 51 (3), citing *Andrews v. Wilbanks*, 265 Ga. 555, 556 (458 SE2d 817) (1995).

(a) AgSouth brought this timber conversion action against Gowen Timber pursuant to OCGA § 51-12-51, which provides in relevant part:

(a) Every person, firm, or corporation who, *without the written consent of the person holding legal title to land or to an interest in land as security for debt*, as shown by the public records of the county where such land is located, *buys, sells, cuts, removes, holds, disposes of, changes the form of, or otherwise converts* to the use of himself, itself, or another *any trees growing or grown on such land shall be liable to the holder of the legal title for such trees*, in any form, bought, sold, cut, removed, held, disposed of, changed in form, or otherwise converted by him or it, or for the value of such trees, *provided that recovery may not be for more than the unpaid portion of the secured indebtedness, interest thereon, and a reasonable attorney's fee*. Recovery may be had by action at law from one who purchases, without the consent of the holder of the legal title, such interest in the trees, mineral or other rights, or interest in the encumbered real estate, either jointly or severally, with the holder of the equitable title.

(b) The equitable owner of the land shall be allowed to use the timber for his own use, such as for firewood or other necessary uses of timber in and around his farm.

13

(Emphasis supplied.) A legal owner[4] of land seeking to recover for the cutting or other conversion of timber on that land is not required to show that the converter acted fraudulently or in bad faith. See *Thakkar v. St. Ives Country Club*, 250 Ga. App. 893, 896 (5) (553 SE2d 181) (2001) (unauthorized removal of trees from plaintiff's land justified award of damages and attorney fees under OCGA § 51-12-51; "[t]o what *specific* 'use' the trees are then put after the unauthorized removal" was irrelevant) (emphasis in original).

Undisputed evidence showed that Gowen Timber cut timber as to which AgSouth held legal title. The trial testimony of Gowen Timber's manager and co-owner, Alvin Hopkins, showed that in the course of 2010 and 2011, Gowen Timber clear cut up to 200 acres from the Shirley Bluff tract; that Gowen Timber did so without checking public records for any security interest in the timber because of its longstanding business relationship with George Gowen; that Gowen Timber sold the

---

[4] See *Wells Fargo Bank v. Twenty-Six Properties, LLC*, 325 Ga. App. 662, 665, n. 5 (1) (754 SE2d 630) (2014) ("[W]hen a borrower gives a lender a deed to secure debt, the borrower grants and conveys outright legal title in the subject real property to the lender (the grantee) and 'takes a bond for title back to the grantor upon the payment of the debt[.]' OCGA § 44-14-60. . . . Thus, the borrower retains an equitable title and the right to regain or redeem legal title by payment of the secured indebtedness; the borrower also retains the right of possession.").

14

harvested timber on the open market; and that Gowen Timber paid Shirley Bluff, LLC $421,023.63 for the timber thus harvested.

(b) Given the undisputed facts showing that Gowen Timber cut timber on the Shirley Bluff tract, to which AgSouth held legal title by virtue of the deed to secure debt, the only question before this jury was whether AgSouth ever granted its "written consent" to any such removal efforts, as required by both OCGA § 51-12-51 (a) and the unambiguous terms of the deed to secure debt and the renewals of that deed. Gowen Timber asserts that the jury was authorized to determine that (i) verbal consent to cut timber was given at the 2009 closing sufficient to vary the explicit terms of the deed signed the same day; (ii) the parties mutually departed from the explicit terms of the closing documents; and (ii) Good gave written consent in his August 2011 email. We disagree.

(i) *Verbal Consent*. In *Martin*, supra, our discussion of the timber conversion statute began with the observation that

> [w]hen interpreting a statute, all its words must be given due weight; we are forbidden to 'read out' any words in the statute unless a clear reason appears for doing so. Further, if a statute is plain and unambiguous, its words (except for terms of art or those with a particular meaning in connection with a specific trade or subject matter) must be assigned their common and ordinary meaning.

15

218 Ga. App. at 803-804 (1) (citations omitted). We went on to hold that because OCGA § 51-12-51 (a) "clearly and unambiguously requires written consent" by the legal owner to any timber harvest, and because "verbal consent [was] inadequate to satisfy the statute," a trial court did not err when it granted the legal owner summary judgment on its timber conversion claim. Id. at 804 (1). Here, likewise, Don Good's verbal consent to George Gowen's expressions of intent to cut timber on the property, whether expressed at the original closing, at visits to the property, or at the 2010 or 2011 renewals, was inadequate as a matter of law to grant Shirley Bluff, LLC or Gowen Timber the right to harvest any timber on the Shirley Bluff property. See id.

Gowen Timber seeks to forestall this conclusion by citing this Court's recent decision in *Dobson v. Matt Owens Logging Co*., 326 Ga. App. 879 (755 SE2d 374) (2014), in which we held that parol evidence was admissible to show that two parties had orally modified a loan agreement's terms on harvesting timber. *Dobson* was decided, however, under longstanding law to the effect that "an oral modification to a written contract subject to the Statute of Frauds may be effective if the contract as so modified has been acted or performed by one of the parties." Id. at 882 (citation and punctuation omitted). But *Dobson*, which enforced a well-settled rule of contract law in the context of a claim for breach of contract, has no bearing on the statutory

16

tort of timber conversion. Here, by contrast, OCGA § 51-12-51 (a) imposes a requirement on any person or entity seeking to cut timber to obtain "written consent" from the legal owner of that timber, and there is nothing in the statute or our caselaw to suggest that this requirement may be waived.

Further, the general rule is that "parol contemporaneous evidence shall be generally inadmissible to contradict or vary the terms of a valid written instrument." OCGA § 24-3-1; see also OCGA § 13-2-2 (1) ("Parol evidence is inadmissible to add to, take from, or vary a written contract" unless there is "an ambiguity, latent or patent"). As our Supreme Court has often repeated,

> there is no rule of law better settled or more salutary in its application, than that which refuses to admit oral testimony to contradict, vary, or materially affect, written agreements. It would be extremely dangerous and inconsistent with those general rules of evidence, by which we proceed in courts of justice, to allow a party, after giving an instrument, in which he says, "I promise to pay on demand," to say by parol evidence, "You know I did not mean to pay on demand."

*Weintraub v. Cobb Bank & Trust Co.*, 249 Ga. 148, 148-149 (1) (1982) (affirming exclusion of parol evidence of an alleged oral agreement to vary the terms of a written agreement), quoting *Rogers v. Atkinson*, 1 Ga. 12 (1846). Any oral agreement that these parties reached at the 2009 closing as to timber thinning flatly contradicted the

17

unambiguous terms of the security deed signed by both parties at that closing, and thus could not have amounted to a "separate and distinct, collateral oral agreement that is consistent with and forms part of the consideration or inducement for a written agreement." *Great American Builders v. Howard*, 207 Ga. App. 236, 240 (2) (427 SE2d 588) (1993) (citation omitted) (rejecting parol evidence as to oral agreement that contradicted the parties' written contracts, which also barred any verbal agreement).

(ii) *Mutual Departure or Subsequent Agreement.* We must also reject Gowen Timber's assertion that after the execution of the 2009 loan documents, as in the drives across the property in 2010, the parties mutually departed from the deed's explicit and unambiguous requirement that AgSouth give written consent to cut timber. The deed to secure debt contained a dragnet clause that ensured that the deed remained in full force and effect even in the event of a modification. Accordingly, the provision requiring written consent to cut trees was unchanged. *Martin*, 218 Ga. App. at 804 (3) (parties' execution of renewal notes did not abrogate the secured party's security interest in timber when the original security deed contained a dragnet provision that it was intended to secure any renewals of the loan; "because debt continued to exist between [the borrower and the lender], the *original* security deed

18

remained effective") (emphasis in original). Further, even when parties to a written contract reach some "mere understanding" as to the meaning of the "clear and express terms" of that contract *after* its execution, parol evidence of that understanding is inadmissible and its admission error. *Choice Hotels Intern. v. Ocmulgee Fields*, 222 Ga. App. 185, 187 (474 SE2d 56) (1996). Again, parol evidence that George Gowen and Don Good reached some "understanding" at or even after the closing was inadmissible because it could be taken to contradict the plain terms of the loan documents, which barred cutting without "written consent." Id. (reversing jury verdict when trial court erred in admitting parol evidence to show that parties mutually departed from the terms of a clearly written contract).

(iii) *Purported Written Consent before the 2011 Renewal.* Gowen Timber also points to Good's email of August 26, 2011 to Doug Gowen, characterizing it as written consent to cut timber on the Shirley Bluff tract. But at least 80 acres of the timber was cut in 2010, months before Good composed his August 2011 email for the purpose of explaining or asking AgSouth to excuse the previous harvesting by Gowen Timber as the loan committee considered whether to renew the $2 million loan for the third time and whether to require George Gowen and Shirley Bluff, LLC to make a $150,000 reduction in principal: "I'm going to try and justify the [timber] harvest to

say it was used to make last year['s] payments and interest and hope it flys [sic]." Good also noted that he had expected the borrowers to pay off the loan in the first year, and that although he had told George Gowen that "thinning, etc. would be ok," Good "had no idea" that George Gowen would "clear-cut 80 acres." This last statement cannot be interpreted as written consent to cutting, either past or future; rather, it merely confirmed that Good had previously given verbal consent, which we have held above to be inadequate as a matter of law for the purpose of granting harvesting rights in the property to Gowen Timber, and also expressed Good's surprise that such consent had been relied upon to clear-cut a portion of the property.

In sum, the record provides no evidence of a prior or contemporaneous oral agreement to vary the explicit terms of the original loan documents or of any subsequent agreement so to vary those terms. The record shows, however, that the admission of evidence as to AgSouth's purported consent to timber harvesting likely had an impact on the jury's verdict in favor of Gowen Timber, as when the jury asked the trial court whether it could consider "the testimony of [a] witness" such that "the testimony [could] override the [terms of the] signed legal document." The trial court answered the jury's question in the affirmative. Given that, as discussed above, parol evidence had no probative value on the issue whether Gowen Timber obtained the

20

written consent required by OCGA § 51-12-51 (a) (or even the 2009 security deed to cut timber from the Shirley Bluff tract), and that the jury apparently considered such parol evidence in the course of reaching its verdict for Gowen Timber, the trial court committed harmful error when it denied AgSouth's motion in limine to exclude this parol evidence and when it responded affirmatively to the jury's question as to this evidence's probative value. See *Martin*, 218 Ga. App. at 804 (2) (affirming trial court's exclusion of parol evidence as "inadmissible to contradict or vary the terms of the written documents" requiring written consent to harvest timber); *Lee v. White*, 249 Ga. 99, 101 (1) (b) (286 SE2d 723) (1982) (affirming grant of motion in limine to exclude parol evidence when such evidence was not admissible to modify the terms of an unambiguous written contract and when party offering parol evidence had unclean hands).

For the same reasons, the trial court also erred when it denied AgSouth's motions for directed verdict and for judgment notwithstanding the verdict as to Gowen Timber's liability for converting the Shirley Bluff timber. *Martin*, 218 Ga. App. at 804 (1) (affirming grant of summary judgment to bank which had purportedly given verbal consent to timber cutting); *Cordele Sash, Door & Lumber Co. v. Prudential Ins. Co.*, 86 Ga. App. 738, 742 (2) (72 SE2d 497) (1952) (where evidence

21

showed that plaintiff held a recorded security deed in land and that defendant had cut and removed timber from that land without plaintiff's consent, "a verdict was demanded for the plaintiff").

3. Given that Gowen Timber's liability for timber conversion is established as a matter of law, the only question remaining is the proper scope of a new trial.[5]

(a) "The issue of damages is a matter for the jury, and a reviewing court should not interfere with the jury's damages award unless it is so small or excessive that it justifies an inference of gross mistake or undue bias." *Lou Robustelli Marketing Svcs. v. Robustelli*, 286 Ga. App. 816, 820 (4) (650 SE2d 326) (2007) (citation and punctuation omitted). Here, we cannot know whether, had the jury been directed that Gowen Timber was liable for timber conversion as a matter of law, that jury would have awarded AgSouth any or all of the $421,023.63 claimed as "the unpaid portion of the secured indebtedness" as well as "interest" and "a reasonable attorney fee." OCGA § 51-12-51 (a). Because the issues of damages, interest, and fees are properly left to a jury, we order a new trial only as to them. *Cordele Sash, Door & Lumber Co.*, 86 Ga. App. at 742 (2) (affirming trial court's submission of "the amount of the value

___

[5] Our grant of a new trial moots AgSouth's contentions, made without citation to authority, that the trial court erred in overruling AgSouth's objections to charges on promissory estoppel, mutual departure, and a subsequent oral agreement.

22

of the timber cut and removed" as well as "the issue as to the recovery of reasonable attorney fees" to a jury); see also *Robustelli*, 286 Ga. App. at 821 (4) (remanding for a new trial limited to damages arising from breach of fiduciary duty when the appellate court could not determine whether the jury's award was based on proper or improper claims of such breach); *Douglas v. Bigley*, 278 Ga. App. 117, 124-125 (1) (e) (628 SE2d 199) (2006) (granting a new trial on issues of breach of fiduciary duty and fees where trial court improperly denied defendants' motion for directed verdict on other issues).

(b) We now consider AgSouth's contentions that the trial court erred when it denied other portions of AgSouth's motions in limine because some of these matters are likely to recur at a new trial as to damages. AgSouth asserts that the trial court erred when it admitted evidence as to (a) the appraisal of Shirley Bluff as having a value of $2 million; (b) the profits made by Gowen Timber on its sale of the timber at issue; (c) AgSouth's alleged violations of Gowen Timber's rights under the Farm Credit Act, 12 U.S.C. § 2001 et seq.; and (d) the reasonableness of AgSouth's attorney fees, which it sought pursuant to OCGA § 13-1-11.

(a), (b) "Evidence having a tendency to establish facts in issue is relevant and admissible, and no matter how slight the probative value, our law favors admission

23

of relevant evidence." *Martin v. Williams*, 215 Ga. App. 649, 651 (3) (451 SE2d 822) (1994) (citations and punctuation omitted). Although AgSouth asserts that the value of the Shirley Bluff tract is "not an issue" in its timber conversion case against Gowen Timber, a jury would be authorized to consider a variety of evidence, including any appraisals of the property, in determining whether AgSouth's purchase price for the property at foreclosure was artificially low as part of a strategy to increase the value of its timber conversion action to recover the "unpaid portion of [AgSouth's] secured indebtedness." OCGA § 51-12-51 (a). A jury might also find the profit Gowen Timber made on the sale of the converted timber on the market relevant to the extent of Gowen Timber's liability under the statute. Because both of these topics might have some bearing on the calculation of damages, the trial court should allow the admission of evidence concerning the Shirley Bluff property's appraised value and Gowen Timber's profits from the sale of the converted timber. See *One Bluff Drive,* 330 Ga. App. at 51 (3) (trial court did not abuse its discretion when it denied motion in limine and authorized the admission of evidence as to damages).

(c) Our determination in Division 1 that Gowen Timber is liable as a matter of law for its conversion of the Shirley Bluff timber moots AgSouth's contention that

the trial court erred in denying its motion in limine to exclude evidence of AgSouth's conduct under the Farm Credit Act.

(d) AgSouth also argues that because the deed to secure debt gave it the right to recover "reasonable attorney[] fees of not less than 10% of the amount secured," and because the computation of such fees is a question of law,[6] the trial court erred

---

[6] OCGA § 13-1-11 provides in relevant part:

(a) Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectable as a part of such debt if such note or other evidence of indebtedness is collected by or through an attorney after maturity, subject to . . . the following provisions: (1) If such note or other evidence of indebtedness provides for attorney's fees in some specific percent of the principal and interest owing thereon, such provision and obligation shall be valid and enforceable up to but not in excess of 15 percent of the principal and interest owing on said note or other evidence of indebtedness; (2) If such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees without specifying any specific percent, such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00 . . . .

25

when it allowed the jury to consider whether AgSouth was entitled to reasonable attorney fees. We agree in part.

It is true that because a party's entitlement to reasonable attorney fees under OCGA § 13-1-11 "is one of contract construction and the application of mathematical computation to uncontroverted amounts, it is a question of law for the Court." *Toombs v. Meyer M. Cardin Living Trust # 2*, 279 Ga. App. 682, 685 (2) (632 SE2d 410) (2006). AgSouth's timber conversion claim sounds in tort, however, and OCGA § 13-1-11 itself specifies that "[t]he provisions of this code section shall not authorize the recovery of attorney's fees in any tort claim." OCGA § 13-1-11 (d). Further, and as Gowen Timber noted when it objected to the trial court's charge on OCGA § 13-1-11, Gowen Timber was not a party to and did not sign either the deed to secure debt, the original promissory note from Gowen Oil, or any of the subsequent loan agreements. It follows that the trial court erred when it instructed the jury as to the provisions of OCGA § 13-1-11, but not when it instructed that jury to consider whether to award AgSouth reasonable attorney fees, to which AgSouth was entitled

---

(d) *The provisions of this code section shall not authorize the recovery of attorney's fees in any tort claim.* (Emphasis supplied.)

under the timber conversion statute. OCGA § 51-12-51 (a) (plaintiff in timber conversion "may not [recover] more than the unpaid portion of the secured indebtedness, interest thereon, and a reasonable attorney's fee").

*Judgment reversed and case remanded with direction. Andrews, P. J., and Miller, P. J., concur.*