**FIFTH DIVISION**
**DILLARD, P. J.,**
**REESE and BETHEL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 15, 2017**

# In the Court of Appeals of Georgia

A16A2192. REDCEDAR, LLC v. CML-GA SOCIAL CIRCLE, LLC.

A16A2193. CML-GA SOCIAL CIRCLE, LLC v. REDCEDAR, LLC.

REESE, Judge.

In these companion cases, the parties dispute whether Redcedar, LLC, a company which cut and removed timber from certain property, can be held liable under the Georgia Timber Collateral Conversion Statute ("GTCCS"), OCGA § 51-12-51, and, if so, the proper measurement of damages arising from such conversion. In Case No. A16A2192, Redcedar appeals from an order of the Superior Court of Newton County granting a motion for partial summary judgment filed by CML-GA Social Circle, LLC ("CML-GA"), based on a finding that Redcedar was liable under

the GTCCS as a matter of law.[1] In Case No. A16A2193, CML-GA appeals from a related order granting Redcedar's cross-motion for partial summary judgment as to the applicable measure of damages to be determined at trial. For the reasons set forth, infra, we affirm the grant of partial summary judgment to CML-GA in Case No. A16A2192, and we affirm in part and reverse in part the judgment in Case No. A16A2193.

"On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law."[2] With these guiding principles in mind, we turn now to the parties' specific claims of error.

---

[1] The court's order also granted summary judgment to CML-GA as to the liability of Redcedar's co-defendants, Georgia Timber, LLC and its agent, Barry Bedingfield. In addition, the court denied cross-motions for summary judgment filed by Redcedar and Bedingfield. Although Bedingfield initially appealed from the summary judgment order, this Court granted his motion to withdraw the appeal on August 19, 2016. Georgia Timber and CML-GA settled the case after the court entered summary judgment against the former on the issue of liability. Thus, Georgia Timber is not a party to these appeals.

[2] *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003) (citation and punctuation omitted).

2

This case arose from the cutting and removal of timber from portions of undeveloped property in Newton County. In 2007, Carolyn Penland executed a security deed to the entire 463.74-acre parcel of land as collateral for three promissory notes.

In October 2010, the security deed executed by Penland was assigned to CML-GA. When Penland defaulted on the three notes secured by the security deed, CML-GA filed suit on the notes. In August 2012, CML-GA obtained a default judgment against Penland for approximately $9.6 million in principal, accrued interest, late charges, and attorney fees. CML-GA did not, however, institute foreclosure proceedings pursuant to the security deed at that time.

Georgia Timber, LLC, subsequently contracted with Little River Construction Company (a company owned by Penland's son, Michael), for the "thinning and removal" of timber from the property. In September 2013, Georgia Timber applied for a timber harvest permit from Newton County, and it hired Redcedar to cut the trees and haul them off the property. Georgia Timber then sold the timber to third parties.

In October 2014, CML-GA discovered that someone had "clear-cut" several acres of the property and removed the timber. In response, CML-GA filed a complaint for conversion against the Penlands, Georgia Timber, Redcedar, and others, asserting that they had illegally cut and removed timber from the property without first obtaining its written permission and that, as a result, they were liable under the GTCCS. The GTCCS provides, in relevant part, as follows:

> Every person, firm, or corporation who, without the written consent of the person holding legal title to land or to an interest in land as security for debt, . . . buys, sells, cuts, removes, holds, disposes of, changes the form of, or otherwise converts to the use of himself, itself, or another any trees growing or grown on such land shall be liable to the holder of the legal title for such trees, in any form, bought, sold, cut, removed, held, disposed of, changed in form, or otherwise converted by him or it, or for the value of such trees, provided that recovery may not be for more than the unpaid portion of the secured indebtedness, interest thereon, and a reasonable attorney's fee. Recovery may be had by action at law from one who purchases, without the consent of the holder of the legal title, such interest in the trees, mineral or other rights, or interest in the encumbered real estate, either jointly or severally, with the holder of the equitable title.[3]

---

[3] OCGA § 51-12-51 (a).

4

In its complaint, CML-GA alleged that, because the removal of the timber had diminished the fair market value of the real property, the damaged property provided "inadequate security to cover the debt owed [by Penland] under the Security Deed."

CML-GA subsequently amended its complaint to add allegations that, under the GTCCS, Redcedar was a "purchaser" of the timber removed from the property or, in the alternative, purchased an "interest" in that timber. CML-GA also added a claim that Redcedar "aided, abetted, and assisted" Georgia Timber in the unauthorized removal and purchase of the timber removed from the property and, as a result, was just as liable as Georgia Timber for damages under the GTCCS.

In February 2015, while this conversion action was pending, CML-GA instituted foreclosure proceedings under the security deed. CML-GA purchased the property at the foreclosure sale, crediting $4.4 million toward Penland's outstanding debt on the notes.

Then, in July 2015, CML-GA filed a motion for partial summary judgment in the instant conversion action, seeking a ruling that the co-defendants were liable as a matter of law under the GTCCS. In its brief and documents supporting the motion, CML-GA asserted that, after it credited $4.4 million from the foreclosure sale to the balance owed on the promissory notes that were subject to the security deed, a

5

deficiency remained unpaid on the notes. It claimed that the co-defendants were liable for this "unpaid portion of the indebtedness [that was] secured by the security deed."

In response to CML-GA's motion for partial summary judgment, Redcedar filed a cross-motion for summary judgment on CML-GA's complaint, denying that it was liable under the GTCCS because, although it had cut and removed timber from the property, it had been hired to do so by Georgia Timber and, as a result, was simply acting as a contractor under the direction of Georgia Timber. Redcedar also contended that CML-GA could not recover money damages under the GTCCS because it had foreclosed on its security interest in the property. According to Redcedar, the plain language of the statute provided that a plaintiff's "recovery may not be for more than the unpaid portion of the secured indebtedness, interest thereon, and a reasonable attorney's fee." It argued that the foreclosure on the security deed extinguished any "secured indebtedness" upon which to claim damages under the statute. Further, Redcedar argued that CML-GA should be estopped from trying to recover a deficiency judgment, i.e., the difference between the outstanding balance on the notes and the proceeds from the foreclosure sale, because CML-GA had failed to obtain a judicial confirmation of the sale, pursuant to OCGA § 44-14-161. Finally, it argued that, even if CML-GA had secured a judicial confirmation of the sale, it

should be estopped from seeking a deficiency judgment from Redcedar because CML-GA had failed to provide it with notice of the confirmation proceedings, as required by OCGA § 44-12-161 (c).

Following motion hearings, the trial court denied Redcedar's motion for summary judgment and granted partial summary judgment to CML-GA, finding that the co-defendants were liable as a matter of law under the GTCCS. Redcedar appeals from the court's order.

1. Redcedar contends that the trial court erred in concluding that it was liable as a matter of law under the GTCCS, arguing that it is not within the class of defendants subject to liability under the statute. Given the plain language of the statute, however, this argument lacks merit.

> In interpreting any statute, we necessarily begin our analysis with familiar and binding canons of construction. Indeed, in considering the meaning of a statute, our charge as an appellate court is to presume that the General Assembly meant what it said and said what it meant. And toward that end, we must afford the statutory text its plain and ordinary meaning, consider the text contextually, read the text in its most natural and reasonable way, as an ordinary speaker of the English language would, and seek to avoid a construction that makes some language mere surplusage. In sum, where the language of a statute is plain and

susceptible of only one natural and reasonable construction, courts must construe the statute accordingly.[4]

With regard to the GTCCS, the General Assembly left little doubt as to how it expected this statute to be construed.[5] Indeed, the statute explicitly provides as follows:

> *Every person, firm, or corporation who*, without the written consent of the person holding legal title to land or to an interest in land as security for debt, . . . buys, sells, *cuts*, *removes*, holds, disposes of, *changes the form of*, or otherwise converts to the use of himself, itself, or another any trees growing or grown on such land *shall be liable to the holder of the legal title for such trees*, in any form, bought, sold, *cut*, *removed*, held, disposed of, *changed in form*, or otherwise converted by him or it[.][6]

In this case, Redcedar did not dispute that it cut and removed timber from the property without CML-GA's written authorization. It argued, however, that it had been hired as a contractor by Georgia Timber to cut and remove the timber and, as a

---

[4] *Holcomb v. Long*, 329 Ga. App. 515, 517-518 (1) (765 SE2d 687) (2014) (punctuation and footnotes omitted).

[5] See generally *Holcomb*, 329 Ga. App. at 518 (1).

[6] OCGA § 51-12-51 (a) (emphasis supplied).

result, it could not be held directly liable for its actions in this case. In support of this argument, Redcedar showed that it was not a party to the timber removal contract between Georgia Timber and Little River, and it did not obtain the timber removal permit from Newton County. Further, Redcedar argued that, as a contractor hired by Georgia Timber, it provided services pursuant to Georgia Timber's instructions and under the company's direction; that it had relied on Georgia Timber to obtain the necessary consent and permits to authorize the timber removal; that this reliance was consistent with industry standards and practices; and that, while it was compensated by Georgia Timber for its services, it did not purchase or sell the timber at issue in this case.

However, we decline to construe the plain language of the GTCCS in a manner that provides for an exception to liability for those who admittedly violated the statute, but insist that they only did so as an agent or employee of another. Indeed, doing so would run afoul of the General Assembly's explicit creation of broad, strict liability for *anyone* who cuts, removes, or otherwise converts timber from property without the written consent of those with an ownership or security interest in the land.[7] Consequently, we conclude that the trial court did not err in finding that

---

[7] See generally *Holcomb*, 329 Ga. App. at 520 (1).

Redcedar was liable to CML-GA under the GTCCS as a matter of law and in granting

partial summary judgment to CML-GA on this issue.[8]

2. Nevertheless, Redcedar contends that, despite the above-quoted language,

OCGA § 51-12-51 (a) limits liability to either the purchasers of the timber at issue or

the holder of the equitable title to the property. In support of this argument, Redcedar

relies on the second sentence of the statute, which provides that "[r]ecovery may be

had by action at law *from one who purchases*, without the consent of the holder of the

---

[8] We note that this Court has previously held that individuals who cut or removed trees without the requisite consent could be held liable under the GTCCS, although the rulings did not expressly address the issues raised by Redcedar in this appeal. See, e.g., *AgSouth Farm Credit v. Gowen Timber Co.*, 336 Ga. App. 581, 587-592 (2) (b) (784 SE2d 913) (2016) (holding that a company that cut, removed, and sold timber from land that secured a debt held by the plaintiff was liable as a matter of law under the GTCCS because it had not first obtained the written consent of the plaintiff); *Thakkar v. St. Ives Country Club*, 250 Ga. App. 893, 896 (5) (553 SE2d 181) (2001) (holding that a person who cut and removed timber from a golf course was liable to the owners of the course as a matter of law under the GTCCS, regardless how the person subsequently disposed of the timber, i.e., by using, selling, or discarding it); *Southern Land & Cattle Co. v. Simmons*, 202 Ga. App. 734, 736 (415 SE2d 329) (1992) (holding that a person who cut and removed timber pursuant to the direction of the person in possession of the property, but without the written consent of the company holding legal title to the land, could be held liable under the GTCCS); *Cordele Sash, Door & Lumber Co. v. Prudential Ins. Co. of America*, 86 Ga. App. 738, 742 (2) (72 SE2d 497) (1952) (holding that a company that cut and removed timber from land that secured a debt held by the plaintiff was liable as a matter of law under an earlier version of the GTCCS because it had not first obtained the written consent of the plaintiff).

legal title, *such interest in the trees*, mineral or other rights, or interest in the encumbered real estate, *either jointly or severally, with the holder of the equitable title*."[9]

However, the fact that this sentence provides that the holder of legal title or a security interest in the property *may also recover* from the purchaser of an interest in the subject trees, the holder of equitable title to the property, or both, does not negate or undermine the strict liability that the first sentence of the statute expressly imposes on those who, inter alia, cut and remove trees without written consent. Indeed, Redcedar's proposed construction of the GTCCS would render the statute's express imposition of strict liability for cutting and removing trees without consent meaningless, essentially treating it as mere surplusage.[10]

Consequently, we find this argument to be without merit.

---

[9] OCGA § 51-12-51 (a) (emphasis supplied).

[10] See *Hill v. Owens*, 292 Ga. 380, 383 (2) (a) (738 SE2d 56) (2013) ("[T]his Court avoids interpreting statutes in a manner that renders any portion of them surplusage or meaningless.") (citation omitted); *Motors Acceptance Corp. v. Rozier*, 278 Ga. 52, 53 (1) (597 SE2d 367) (2004) ("This Court is to construe the statute to give sensible and intelligent effect to all of its provisions and to refrain from any interpretation which renders any part of the statute meaningless.") (punctuation and footnote omitted); see also *Holcomb*, 329 Ga. App. at 517-518 (1).

3. Redcedar contends that the trial court erred in rejecting its argument that CML-GA could not recover under the GTCCS because it no longer held a security interest in the property. Redcedar also argues that the trial court erred in finding that it was liable to CML-GA for "the unpaid portion of the secured indebtedness" under the GTCCS, arguing that CML-GA was seeking a deficiency judgment following its foreclosure on the property.

Redcedar has failed, however, to show that the trial court specifically ruled on these issues. "When this Court reviews a decision of a trial court on a motion for summary judgment, it sits as a court for the correction of errors of law. An error of law has as its basis a specific ruling made by the trial court."[11] It follows that, because the trial court did not rule on these issues, there is nothing for this Court to review.[12]

*Case No. A16A2193*

In this case, CML-GA appeals from the trial court's grant of Redcedar's cross-motion for partial summary judgment as to the appropriate measure of damages to be applied in this case.

---

[11] *Williams v. United Cmty. Bank*, 313 Ga. App. 706, 707-708 (722 SE2d 440) (2012) (citation and punctuation omitted).

[12] Id.

12

4. CML-GA contends that the trial court erred in limiting the amount of damages it could recover at trial to the value of the trees as personal property, instead of allowing it to recover damages in the amount of the diminished value of the land that resulted from Redcedar's unauthorized removal of timber. We disagree.

As shown above, the GTCCS specifically provides that a person who converts timber shall be liable "*for such trees, in any form*, bought, sold, cut, removed, held, disposed of, changed in form, or otherwise converted by him or it, *or for the value of such trees*[.]"[13] In this case, the trial court ruled that, given this plain language, "recovery under OCGA § 51-12-51 (a) shall be limited to the value of the removed trees as personal property."

CML-GA has not identified anything in the text of the GTCCS that would allow it to recover damages in the amount of the diminished value of the property due to the unauthorized removal of timber. It follows that CML-GA has failed to show any error in the trial court's grant of summary judgment to Redcedar on this issue.[14]

---

[13] OCGA § 51-12-51 (a) (emphasis supplied).

[14] See *AgSouth Farm Credit*, 336 Ga. App. at 585, 592 (3) (remanding for a new trial on damages only in a conversion case brought under the GTCCS, in which the plaintiff sought to recover the amount paid to the defendant for "the value of the . . . timber"); *Cordele Sash, Door & Lumber Co.*, 86 Ga. App. at 742 (2) (affirming the trial court's submission of "the amount of the value of the timber cut and removed

5. Nevertheless, CML-GA contends that the court abused its discretion in refusing to allow it to present evidence of the diminished value of the property at trial for the purpose of showing that it is entitled to attorney fees and punitive damages. It argues that such evidence is relevant to show that Redcedar acted in bad faith and in conscious indifference to the consequences,[15] contending that, when Redcedar cut and removed the timber, it knew that its actions would diminish the value of the property.

It is axiomatic that, "[e]vidence having a tendency to establish facts in issue is relevant and admissible, and no matter how slight the probative value, our law favors admission of relevant evidence."[16] Under the circumstances presented here, we

by the defendant" to the jury).

[15] See OCGA §§ 13-6-11 ("The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."); 51-12-5.1 (b) ("Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.").

[16] *AgSouth Farm Credit*, 336 Ga. App. at 593 (3) (a), (b) (citation and punctuation omitted). See also OCGA §§ 24-4-401 ("[T]he term 'relevant evidence' means evidence having any tendency to make the existence of any fact that is of

14

conclude that the trial court erred in refusing to allow CML-GA to present evidence of the diminished value of the property following Redcedar's removal of timber at trial for the limited purpose of demonstrating its entitlement to attorney fees and punitive damages. Thus, we reverse that portion of the trial court's order in Case No. A16A2193.

*Judgment affirmed in Case No. A16A2192. Judgment affirmed in part and reversed in part in Case No. A16A2193. Dillard, P. J., and Bethel, J., concur.*

---

consequence to the determination of the action more probable or less probable than it would be without the evidence."); 24-4-402 ("All relevant evidence shall be admissible," unless constitutional or other legal authority renders it inadmissible.).