**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN AND MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 17, 2024**

# In the Court of Appeals of Georgia

A23A1708. BENNETT v. CASHIN et al.

MCFADDEN, Presiding Judge.

This appeal challenges a trial court order granting a motion for judgment notwithstanding a jury's verdict that had been returned in favor of appellant Dan Bennett. The material evidence, however, was not in conflict and demanded a verdict contrary to that of the jury. Bennett's claim is barred by statute. Under OCGA § 43-41-17 an unlicensed contractor cannot enforce a contract for the performance of work for which a license is required and to which no exception applies. So we affirm.

1. *Facts and procedural posture*

Philip and Kelli Cashin hired Bennett to replace the roof on their house, with the scope of the work based on an insurance estimate. Bennett also agreed to perform

extra work on the house beyond the roof replacement. Bennett personally performed the roofing repairs, but hired subcontractors to perform the extra work on the house, which included replacing rotting columns on the front of the house.

Bennett filed a complaint against the Cashins, alleging breach of contract for failure to pay. The Cashins answered the complaint, and the case proceeded to a jury trial at which the extra work was in dispute. At the close of the plaintiff's evidence, the Cashins moved for a directed verdict on the basis that Bennett could not recover because he had acted as a general contractor without having the mandatory contractor license. The trial court reserved ruling on the motion and submitted the case to the jury, which returned a verdict in favor of Bennett in the amount of $30,000.

The court then treated the Cashins' motion for a directed verdict as a motion for judgment notwithstanding the verdict and directed the parties to file briefs on the matter. Based on the briefs and the evidence, the court granted the motion, finding that Bennett could not recover because he did not hold a statutorily-required contractor license. Bennett moved for a new trial, which was denied, and then brought this appeal.

2. *Judgment notwithstanding the verdict*

Bennett argues that the trial court erred in granting the Cashins' motion for judgment notwithstanding the verdict. We disagree.

"In order to prevail on [a] motion for judgment notwithstanding the verdict, [the movant] is obliged to show that there was no conflict in the evidence as to any material issue and that the evidence introduced, with all reasonable deductions therefrom, demanded the verdict sought." *AgSouth Farm Credit v. Gowen Timber Co.*, 336 Ga. App. 581, 587 (2) (784 SE2d 913) (2016) (citation and punctuation omitted). "The appellate standard for reviewing the grant of a judgment notwithstanding the verdict is whether the evidence, with all reasonable deductions therefrom, demanded a verdict contrary to that returned by the factfinder." *Mosley v. Warnock*, 282 Ga. 488 (1) (651 SE2d 696) (2007) (citation and punctuation omitted).

Here, the trial court found that the evidence demanded a verdict contrary to that returned by the jury because Bennett did not hold a contractor license as required by OCGA § 43-41-17, which is part of a statutory framework "provid[ing] a broad statewide licensing system for residential and general contractors[.]" *Restor-It v. Beck*, 352 Ga. App. 613, 615 (835 SE2d 398) (2019). "[T]hese licensing requirements . . . are intended for the protection of the public against . . . faulty, inadequate, inefficient, and

unsafe residential and general contractors. OCGA § 43-41-1." Id. at 617-618 (punctuation omitted).

OCGA § 43-41-17 (a) provides that "no person, whether an individual or a business organization, shall have the right to engage in the business of residential contracting or general contracting without a current, valid residential contractor license or general contractor license[.]" Subsection (b) of that code section further provides that contracts in violation of subsection (b) are unenforceable by the unlicensed contractor.

> As a matter of public policy, any contract entered into . . . for the performance of work for which a residential contractor or general contractor license is required by this chapter and not otherwise exempted under this chapter and which is between an owner and a contractor who does not have a valid and current license required for such work in accordance with this chapter shall be unenforceable in law or in equity by the unlicensed contractor.

OCGA § 43-14-17 (b).

Bennett has cited no evidence showing that the trial court erred in finding that the uncontroverted evidence showed that the repair work in question required a general contractor license and that Bennett did not hold such a license. There is no transcript of the trial, so Bennett relies on a stipulation of facts filed in lieu of such

4

transcript. See OCGA § 5-6-41 (g). But that stipulation expressly provides that Bennett admitted he had served as the general contractor on the project, that he hired subcontractors to perform the work in question, that a subcontractor testified that Bennett was the general contractor on the project, and that there was no evidence Bennett held a general contractor license.

Although the stipulated facts plainly show that Bennett acted as a general contractor without the requisite license, Bennett argues that he was exempt from the general contractor license requirement under the "repair work" exception set forth in OCGA § 43-41-17 (g), which provides:

> Nothing in this chapter shall preclude a person from offering or contracting to perform or undertaking or performing for an owner repair work, *provided that the person performing the repair work discloses to the owner that such person does not hold a license under this chapter and provided, further, that such work does not affect the structural integrity of the real property.*

(Emphasis supplied).

Bennett's reliance on the exemption in this code section is misplaced. He has pointed to no evidence showing that he disclosed to the Cashins that he did not hold a general contractor license. On the contrary, according to the stipulated facts, Bennett admitted that he never discussed licensing with the Cashins and they

5

confirmed that he did not discuss his licensing status to serve as a general contractor. Moreover, the stipulations further provide that multiple witnesses, including a subcontractor called by Bennett, testified that the rotting columns were structural in nature and posed a risk of the front of the house collapsing due to their poor condition as a structural component. "Thus, the evidence presented at trial showed that [Bennett], as a matter of law, did not qualify for the exemption in OCGA § 43-41-17 (g)." *Fleetwood v. Lucas*, 354 Ga. App. 320, 324 (1) (840 SE2d 720) (2020) (plaintiff did not disclose to defendants that he did not hold a contractor license).

Because Bennett did not have the required contractor license, he "was barred from bringing this action by OCGA § 43-41-17 (b), and the trial court [did not] err[] by . . . granting [the] motion for [judgment notwithstanding the] verdict." *Fleetwood*, supra at 325 (1). See also *Restor-It*, supra at 623 (6) ("OCGA § 43-41-17 (b) bars an unlicensed contractor from enforcing a contract for the performance of work for which a license is required and to which no exception applies").

3. *Remand*

Although not set out as a separate enumeration of error, Bennett makes an alternative suggestion that we remand the case for the trial court to determine if some

portion of the jury's verdict met the license exemption discussed above. We decline the suggestion because "[e]ven if all of the work done by [Bennett] was repair work, [the exemption in] OCGA § 43-41-17 (g) does not apply because [he] did not disclose to [the Cashins] that he did not hold a contractor license." *Fleetwood*, supra at 324 (1).

*Judgment affirmed. Brown and Markle, JJ., concur.*